MELANIE TARKA *v.* ANTON FILIPOVIC ET AL.
(AC 15153)

Foti, Heiman and Schaller, Js.

---

Argued December 10, 1996—officially released May 6, 1997

*John R. Williams*, for the appellant (plaintiff).

*Donald R. Kiefer*, with whom, on the brief, was *David Kelso McConnell*, for the appellees (defendants).

*Opinion*

FOTI, J. The plaintiff, Melanie Tarka, appeals from the trial court's decision rendering judgment in accordance with an attorney trial referee's report. On appeal, the plaintiff claims that the trial court improperly concluded that the facts found did not constitute (1) an invasion of privacy and (2) a violation of the Connecti-

cut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq.

After trial before an attorney trial referee (attorney referee), the attorney referee submitted a twenty-six page report of her findings and recommendations. The trial court rendered judgment in accordance with the report, which found that the plaintiff prevailed on her claim that the defendants, Anton Filipovic and Rosanda Filipovic, had failed to return her security deposit (count one), awarding $1600 plus interest, and on her claim for emotional distress[1] (count four), awarding damages in the amount of $1500. Further, the trial court rendered judgment for the defendants on all remaining counts[2] of the plaintiff's nine count amended complaint, and rendered judgment for the plaintiff on the defendants' counterclaim.[3]

The attorney referee found the following relevant facts. The plaintiff entered into a lease agreement with

[1] The plaintiff alleges a claim of invasion of privacy and intentional infliction of emotional distress in count four. The attorney referee awarded damages for emotional distress, but did not award compensatory or punitive damages for the claim of invasion of privacy.

[2] The plaintiff alleged (1) unauthorized entry in violation of General Statutes § 47a-16 (d) and damages in accordance with General Statutes § 47a-18a (count two), (2) theft under General Statutes §§ 52-564 and 53a-119 for items allegedly taken during the unauthorized entry and treble damages under § 52-564 (count three), (3) peaceable entry and detainer under General Statutes § 47a-43 (a) (3) and writ of restitution under General Statutes § 47a-45 (count five), (4) deliberate utility shutoff in violation of General Statutes § 47a-13 and damages and attorney's fees under the statute (count six), (5) refusal to allow the plaintiff to use the laundry facilities in contravention of an alleged oral agreement in violation of General Statutes § 47a-9 and retaliatory eviction in violation of General Statutes § 47a-20 (count seven), (6) retroactive rent abatement for failing to install smoke detectors in violation of General Statutes §§ 29-292 (a) (1), 47a-7 (a) (1) and 47a-4a (count eight), and (7) violation of CUTPA, General Statutes § 42-110a et seq. (count nine).

[3] The defendants claimed that the plaintiff damaged the apartment by causing smoke damage to the walls and ceilings and by burning and staining the carpeting.

the defendants for a one bedroom unit on the first floor of 297 Bruce Park Avenue, Greenwich, for $800 a month. The plaintiff entered into possession of the apartment in March, 1988. After numerous incidents between the plaintiff and the defendants over the next several months,[4] the relationship soured. The defendants demanded that the plaintiff vacate the premises no later than November 30, 1988. The plaintiff voluntarily vacated the premises.

The facts relevant to the claim of invasion of privacy concern notes referring to the plaintiff's psychiatric care. There was conflicting testimony as to how the defendants came into possession of the notes, but the attorney referee determined that the plaintiff failed to prove her claim that the defendants wrongfully entered her apartment and removed the notes. Nevertheless, the attorney referee found that, once the defendants came into possession of the notes, they read them and retained them despite the fact that it must have been clear that they contained information of a personal and private nature. The defendants showed the notes to their attorney. The defendants' attorney made known the basic contents of the notes to the plaintiff's attorney. The notes were then filed with the trial court in connection with discovery proceedings.[5] The attorney referee found that the defendants' conduct in circulating the notes was wrongful and found them liable under the plaintiff's claim of emotional distress. The attorney referee then determined whether the act of publishing the notes constituted an invasion of privacy. She found that the defendants did not circulate or make the notes known to the general public. The attorney referee concluded that the defendants gave the notes to their attor-

---

[4] These incidents will be discussed where relevant to the claims on appeal.

[5] The contents of the notes were the subject of many of the interrogatories filed by the defendants and the notes themselves were attached as exhibits to the defendants' request to admit.

ney as part of discovery and that, therefore, no invasion of privacy occurred.

The facts relevant to the CUTPA claim concern the defendants' actions as the plaintiff's landlord. The plaintiff claims that the defendants failed to place her security deposit into an interest bearing account, that they turned off the electricity in the apartment and that the circulation of the notes constituted a violation of CUTPA.[6] The attorney referee determined that, while the defendants' conduct was "injudicious, ill-advised and tortious," it did not constitute a violation of CUTPA.

I

As a preliminary matter, we must examine the procedures that govern matters heard by an attorney referee. See Practice Book § 428 et seq. An attorney referee "is obliged to report to the court 'the facts found and the conclusions drawn therefrom,' but the report may be supplemented with a 'memorandum of decision including such matters as [the attorney referee] may deem helpful in the decision of the case . . . .' Practice Book § 434." *Seal Audio, Inc.* v. *Bozak, Inc.*, 199 Conn. 496, 503, 508 A.2d 415 (1986). The parties may seek additions or corrections in the facts contained in this report by filing a motion to correct with the attorney referee pursuant to Practice Book § 438.[7] After the attorney referee responds to any motions to correct, the parties may file with the trial court exceptions to findings of

---

[6] The plaintiff's other claims of improper conduct on the part of the defendants are not included in review of this CUTPA claim because the attorney referee found in favor of the defendants on the remaining claims and the plaintiff does not challenge these findings.

[7] Practice Book § 438 provides in relevant part: "If either party desires to have the report or the finding corrected by striking out any of the facts found, or by adding further facts, or by stating the claims of the parties made before the committee, or by setting forth rulings upon evidence or other rulings of the committee, he shall within two weeks after the filing of the report or finding file with the court a motion to correct setting forth the changes and additions desired by him. . . ."

fact pursuant to Practice Book § 439[8] or objections to factual conclusions or rulings pursuant to Practice Book § 440.[9] *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 503, 518.

In *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 199 Conn. 518, the seminal case examining the procedures for matters heard by an attorney referee, our Supreme Court held that "[w]ith respect to the various claims of error relating to the merits of the factual findings made by the attorney referee, as well as the judgment rendered by the trial court based thereon, the defendant is precluded from effective appellate review by its failure to file a motion to correct the report of the referee pursuant to Practice Book § 438 or an objection to acceptance thereof pursuant to Practice Book § 440."[10]

---

[8] Practice Book § 439 provides in relevant part: "If a committee fails to correct a report or finding in compliance with a motion to correct, the moving party may, within ten days after the decision on the motion to correct, file exceptions seeking corrections by the court in the report or finding. The court will not consider an exception unless its subject matter has been submitted to the committee in a motion to correct, provided that this requirement shall not apply to exceptions taken to corrections in the report or finding made after it was filed; nor will the court correct a finding of fact unless a material fact has been found without evidence or the committee has failed to find an admitted or undisputed fact, or has found a fact in such doubtful language that its real meaning does not appear. . . ."

[9] Practice Book § 440 provides in relevant part: "A party may file objections to the acceptance of a report on the ground that conclusions of facts stated in it were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted. . . ."

[10] Our Supreme Court in *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 199 Conn. 518, refers to *exceptions* pursuant to Practice Book § 440 instead of *objections*. It appears the defendant in *Seal Audio, Inc.*, failed to file a motion to correct pursuant to Practice Book § 438, exceptions pursuant to Practice Book § 439 or objections pursuant to Practice Book § 440.

Recently, the court stated that "[i]n the absence of a motion to correct the report or an objection to its acceptance because the facts had been improperly found, we examine these facts solely to determine whether the referee's findings were *clearly erroneous.*" (Emphasis added.) *Jacobs* v. *Healey Ford-Subaru, Inc.*, 231 Conn. 707, 727–28, 652 A.2d 446 (1995). This statement is criticized by the authors of the annotated Practice Book. See W.

The court declined to review the factual findings because "[a] litigant cannot wholly ignore established procedures for the protection of its rights . . . and hope to receive on appeal the same treatment accorded to those who follow the rules of practice."[11] *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 518.

Here, the plaintiff took no action pursuant to the postreport procedures pursuant to Practice Book §§ 438, 439 or 440.[12] The trial court accepted the findings of fact and factual conclusions and rendered judgment in accordance with the report of the attorney referee.

The plaintiff claims that she is not contesting the findings of fact or factual conclusions of the attorney referee. She asserts, rather, that the trial court, by adopting the report of the attorney referee, improperly applied the law to the facts as found by the attorney referee. "The reviewing court is the effective arbiter of the law and the legal opinions of [an attorney referee], like those of the parties, though they may be helpful,

Moller & W. Horton, 1 Connecticut Practice Series: Practice Book Annotated (Sup. 1997) § 438, authors' comments. They refer to this dictum as a non sequitur because "[f]indings of fact are always reviewed on the clearly erroneous test." Id. Citing *Naftzger* v. *Naftzger & Kuhe, Inc.*, 26 Conn. App. 521, 525, 602 A.2d 606 (1992) (failing to file motion to correct or objection to acceptance of report precludes party from effective appellate review) in their comments to § 440, the authors suggest that a plain error review should apply in the absence of a motion to correct. W. Moller & W. Horton, supra, § 440, authors' comments. They presumably base that suggestion on the argument that the failure to file a motion to correct should create an even more rarified standard of review than the customary standard used in reviewing factual findings.

[11] It appears that if the appellant had complied with the rules of practice, traditional appellate review would apply. See *Naftzger* v. *Naftzger & Kuhe, Inc.*, 26 Conn. App. 521, 525, 602 A.2d 606 (1992).

[12] The defendants, however, filed a motion to correct. The plaintiff objected to the motion to correct, but did not file her own motion to correct. The attorney referee corrected a typographical error, but did not make any other corrections requested by the defendants. The parties did not further challenge the attorney referee report by filing exceptions or objections pursuant to Practice Book §§ 439 and 440.

carry no weight not justified by their soundness as viewed by the court that renders judgment." *Seal Audio, Inc.* v. *Bozak, Inc.*, supra, 199 Conn. 510. While we do not condone the plaintiff's failure to raise such challenges to the attorney referee in a motion to correct, exceptions or objections to the trial court, we must evaluate the trial court's adoption of the attorney referee report as it applies the law to the facts.

## II

The plaintiff claims that the defendants invaded her personal privacy by publishing the notes to their attorney and causing him to publish the notes to the court, and by summarizing the contents of the papers to her attorneys, thereby, damaging her relationship with them. We do not agree.

Our Supreme Court has described the four types of invasion of privacy: "(1) appropriation, for the defendant's benefit or advantage, of the plaintiff's name or likeness; (2) intrusion upon the plaintiff's physical solitude or seclusion; (3) publicity, of a highly objectionable kind, given to private information about the plaintiff even though it is true and no action would lie for defamation; and (4) publicity which places the plaintiff in a false light in the public eye." *Venturi* v. *Savitt, Inc.*, 191 Conn. 588, 591 n.1, 468 A.2d 933 (1983). "Section 652D of the Restatement (Second) of Torts defines a tort action for the invasion of personal privacy as being triggered by public disclosure of any matter that '(a) would be highly offensive to a reasonable person, and (b) is not of legitimate concern to the public.' " *Perkins* v. *Freedom of Information Commission*, 228 Conn. 158, 172, 635 A.2d 783 (1993). "Comment (c) of § 652D recognizes, however, that not all personal and private information is protected from public disclosure: 'The rule stated in [§ 652D] gives protection only against

unreasonable publicity, of a kind highly offensive to the ordinary reasonable [person].' " Id., 173.

The attorney referee determined that, although the facts constituted an intentional infliction of emotional distress, they did not constitute an invasion of privacy. Whether filing the notes with the court is "highly offensive" is a factual determination. The attorney referee found that the defendants did not circulate or make the notes known to the general public. They gave them to their attorney who filed them with the court in connection with discovery. On the basis of her unchallenged factual findings, the attorney referee concluded that the defendants did not invade the plaintiff's privacy. The trial court accepted the attorney referee's conclusion. We do not find this determination to be an improper application of the law.

The plaintiff argues that the defendants unreasonably intruded on her solitude. Neither the attorney referee nor the trial court addressed that argument explicitly. In her report, the attorney referee did not address that theory of invasion of privacy. The attorney referee did not find that the defendants physically intruded on the plaintiff's space or even improperly investigated the plaintiff's private matters.

The plaintiff's failure to comply with the rules of practice governing procedures by which a party may challenge the findings of fact and factual conclusions of the attorney referee proves fatal to this claim. Practice Book §§ 438 and 439 specifically provide a procedure by which a party can challenge the omission of facts in an attorney referee's report. Because the plaintiff did not raise an alternative theory for finding an invasion of privacy in a postreport motion, we are unable to review this argument.

### III

The plaintiff claims that the facts found constitute a violation of CUTPA. She contends that the defendants'

conduct violated CUTPA because it was unfair and caused her substantial injury. We do not agree.

Connecticut applies the so-called cigarette rule, which sets out the standard for a CUTPA violation: "(1) [w]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law, or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [or competitors or other businessmen]." (Internal quotation marks omitted.) *Williams Ford, Inc.* v. *Hartford Courant Co.*, 232 Conn. 559, 591–92, 657 A.2d 212 (1995). " 'All three criteria do not need to be satisfied to support a finding of unfairness. A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three.' " *Cheshire Mortgage Service, Inc.* v. *Montes*, 223 Conn. 80, 106, 612 A.2d 1130 (1992).

The attorney referee found that, while the defendants failed to place the plaintiff's security deposit in an interest bearing account, they have acknowledged that they owe her interest on the deposit. The attorney referee determined that this conduct arose out of the defendants' ignorance of their obligations. The attorney referee further determined that, although the defendants were not justified in turning off the electricity, the situation was quickly remedied. In addition, the attorney referee awarded the plaintiff damages for emotional distress because the defendants submitted the notes to their attorney, who filed the notes with the trial court in connection with discovery. Nevertheless, the attorney referee did not find the defendants' behavior to rise to the level of a CUTPA violation.

"Whether a practice is unfair and thus violates CUTPA is an issue of fact." *DeMotses* v. *Leonard*

*Schwartz Nissan, Inc.*, 22 Conn. App. 464, 466, 578 A.2d 144 (1990). Although the attorney referee found that the defendants were liable for failure to return the deposit plus interest and for emotional distress caused by the circulation of the notes, it did not find in favor of the plaintiff on any of her other claims. The attorney referee implicitly concluded, on the basis of her unchallenged factual findings, that the defendants' conduct did not rise to the level of "unscrupulous, oppressive, immoral or causing substantial injury" and, therefore, did not constitute a violation of CUTPA. The trial court accepted the attorney referee's conclusion. We do not find this determination to be improper.

The judgment is affirmed.

In this opinion the other judges concurred.