[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves the Uniform Commercial Code and a decision as to on whom the risk of loss is imposed when a seller delivers goods to a carrier. The plaintiff, MGA, Inc., doing business as Michael Garbi Associates, of Stamford, purchased computer material from the defendant, Merisel, Inc., of Marlboro, Massachusetts. The plaintiff brought a complaint in two counts. In the first count, the plaintiff alleges that in June of 1994, its customer Citicorp ordered 500 Microsoft Office software packages and 500 Practical Periphoral fax modems; that the plaintiff placed this order with the defendant with instructions to send 200 of each of the above items to Citicorp in Liberty Lake, Washington, and the remaining 300 of each item to Citicorp in Melville, New York; that the defendant failed to fulfill this order in a timely fashion; that on or about August 18, 1994, Citicorp canceled the order[1]
and that the plaintiff has been damaged as a result. In the second count, the plaintiff contends that it advised the defendant that Citicorp was an important customer and that a loss of its account would cause substantial financial damage to the plaintiff. The plaintiff further alleges in this count that Citicorp has terminated its business relationship with the plaintiff and thereby caused a loss of future profits.
The defendant filed an answer denying the material allegations of the complaint, except that it did admit that the plaintiff ordered 200 software packages and 200 fax modems to be shipped by the defendant to a customer of the plaintiff, Citicorp, in Liberty Lake, Washington. The defendant filed seven special defenses and a counterclaim. The first special defense contends that the plaintiff ordered only 200 software packages and 200 fax modems, and not 500 of each as alleged. The second special defense claims that it delivered to the carrier or shipper goods that conformed to the invoice, and that its obligations were therefore satisfied because the invoice stated that when the seller delivers goods to the carrier, title to the property passed to the plaintiff as purchaser.[2] The third special defense alleges that the plaintiff accepted the goods by failing to reject them in a timely fashion. In the fourth special defense, the defendant claims that the plaintiff retained some of the computer goods for itself. The defendant contends in the fifth special defense that the plaintiff continued doing business with it and thus ratified the contract in question. In the sixth defense, CT Page 8255 the defendant denies liability for lost profits based on the wording of the contract between the parties. The defendant claims in the seventh special defense that the plaintiff did not sustain any consequential or incidental damages because Citicorp continued doing business with the plaintiff.
In the first count of the counterclaim, the defendant alleges that the parties entered into a contract by which the defendant, as seller, agreed to sell 200 software packages and 200 fax modems to the plaintiff, as purchaser; that the defendant duly performed its obligations under the contract; and that there is a balance due the defendant in the amount of $90,998. In the second count, the defendant alleges that it sold nine computer hardware and software orders to the plaintiff for a contract price of $36,596.66, which remains due and unpaid by the plaintiff.
The case was referred to Attorney Bernadette Coomaraswamy, an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 19-2. The referee conducted a trial and then submitted a report pursuant to Practice Book §19-4. The referee made the following findings of fact: (1) the plaintiff is a "value added reseller" or a "middle-man supplier" of computer products which it purchases from a supplier such as the defendant and then sells in turn to its own customers; (2) Citicorp was the "end user" or "ultimate consumer" of computer products purchased by the plaintiff from the defendant, as seller, pursuant to an invoice furnished by the defendant and dated on or about July 1, 1994; (3) the invoice provided, among other things, that the plaintiff "shall" notify the defendant within 5 business days after delivery of any claimed defects in the goods, and that the defendant is not liable for any "special, consequential, incidental, or exemplary damages;"' (4) the plaintiff ordered 200 software units and 200 fax modems for a total purchase price of $102,000, which the defendant delivered to its carrier, Yellow Freight System, Inc., for delivery forthwith to a Citicorp subsidiary in Liberty Lake, Washington; (5) only 41 cartons out of 200 were delivered by the carrier to Citicorp on or about July 8, 1994; (6) the balance of the 200 cartons were delivered to Citicorp on or about August 15, 1994, but prior thereto, and on or about August 4, 1994, Citicorp canceled the order and returned the product to the plaintiff who then returned the goods to the defendant, except for 4 software packages and 10 fax modems which it retained for its own purposes; (7) the plaintiff's chief executive officer conceded that he was vacationing at the time of the shipment and hence did not address CT Page 8256 the problem of an incomplete delivery to Citicorp; (8) the plaintiff owes the defendant $38,649 for the computer goods it ordered from the defendant; (9) the defendant shipped all 200 of the software packages and 200 fax modems ordered by the plaintiff in accordance with the plaintiff's instructions; and (10) the plaintiff did not notify the defendant of the failure to complete delivery within 5 business days as provided in the invoice.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the plaintiff did not submit any evidence regarding its claim of lost profits; (2) the invoice clearly provided that title passed to the plaintiff upon the seller's delivery of the goods to the carrier; (3) General Statutes § 42a-2-509 (1) also provides that "the risk of loss passes to the buyer when the goods are delivered to the carrier . . ." (3) in the event that California law is applicable because it is the state where the defendant is incorporated is immaterial as that state's law and Connecticut law on the subject of risk of loss are the same; (4) the plaintiff is not entitled to any consequential damages or lost profits pursuant to the specific terms of the invoice; (5) the defendant did not offer sufficient evidence to sustain the first count of its counterclaim but did prove the allegations of the second count that a balance of $38,649 was due and owing; (6) the defendant in that count claimed damages only in the amount of $36,596.66; (7) the defendant is entitled to interest pursuant to General Statutes § 37-3a
in the amount of $18,298.33, for a total award due the defendant of $54,895; and (8) the defendant is entitled to recover attorneys fees.
The plaintiff did not file a motion to correct or exceptions to the report as authorized by Practice Book §§ 19-12 and 19-13, respectively. The defendant did, however, file objections to the report as authorized by Practice Book § 19-14 ("A party may file objections to the acceptance of a report on the ground that conclusions of fact stated in the report were not properly reached on the basis of the subordinate facts found, or that the committee erred in rulings on evidence or other rulings or that there are other reasons why the report should not be accepted").
The objections filed by the plaintiff claim that: (1) the defendant missent the merchandise and caused the plaintiff to lose its customer; (2) there was no valid contract between the parties and therefore no basis for attorneys fees; (3) the bill for attorney's fees does not include work done by office staff; CT Page 8257 and (4) the disposition of the case has been delayed by the defendant.
In terms of the standard of review of an attorney trial referee's report, the lack of a motion to correct and exceptions to the report means that the factual findings of the referee must be accepted by this court. As was said in Tarka v. Filipovic,45 Conn. App. 46, 54, 694 A.2d 824 (1997), "failure to comply with the rules of practice governing procedures by which a party may challenge the findings of fact and factual conclusions of the attorney referee proves fatal to this claim." In any event, "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.) Elgar v. Elgar, 238 Conn. 839, 848-49,679 A.2d 937 (1996).
As to the objections filed by the plaintiff, it should be noted that "[s]ection 440 . . . cannot be used to attack findings of fact."Iroquois Gas Transmission System v. Mileski 43 Conn. App. 47, 52,682 A.2d 140 (1996). "Absent . . . [an] exception to the report, the trial court, in ruling on the objection, [is] limited to determining whether the subordinate facts were sufficient to support the ultimate factual conclusions." (Internal quotation marks omitted.) Id., 51. As noted previously, the objections filed by the plaintiff all relate to the referee's factual conclusions, and cannot be the basis for rejecting these facts.
Hence, the only issues left for review are whether "the subordinate facts were sufficient to support the ultimate factual conclusions;" Iroquois Gas Transmission System v. Mileski, supra,43 Conn. App. 51; and whether there has been an error of law ("[w]e must evaluate the trial court's adoption of the attorney referee report as it applies the law to the facts"). Tarka v.Filipovic, supra, 45 Conn. App. 53.
CT Page 8258
The subordinate facts found by the referee are in essence that the defendant, as seller, delivered goods ordered by the plaintiff, as purchaser, to a carrier. The referee then made the ultimate factual conclusion that the risk of loss passed to the plaintiff based on both the wording of the invoice and the Uniform Commercial Code. Thus, the subordinate facts found by the referee support her conclusion that the defendant is entitled to recover the cost of goods sold to the plaintiff.
In terms of applying the law to the facts, the only law involved in this case is the Uniform Commercial Code. The referee correctly cited General Statutes § 42a-2-509 (1) as providing that unless the parties otherwise agree, the risk of loss passes to the buyer upon delivery by the seller to a carrier. Therefore, there has not been an error in applying the law to the facts found by the referee.
It follows, therefore, that the recommendation of the attorney trial referee that judgment enter in favor of the defendant as to the complaint, and in favor of the defendant to recover $36,596.66 on its counterclaim, are accepted. Judgment hereby enters in that amount for the defendant.
The referee also recommended that prejudgment interest and attorneys fees be awarded to the defendant. The case is remanded to the referee for two purposes. The first is to state the basis upon which the referee recommends the award of General Statutes § 37-3a interest and when it should commence to run, in order that the referee's calculation of $18,298.33 of interest may be reviewed. The second is to provide the section number or quote in the invoice authorizing counsel fees and to schedule a hearing at which the defendant can rest on its affidavit of legal services or present other evidence, and at which time the plaintiff will have the opportunity to argue against the propriety of awarding legal fees and the amount thereof. The referee should schedule this hearing on remand through the Case Flow Office.
Costs are to be taxed in favor of the defendant by the office of the chief clerk in accordance with General Statutes § 52-257
and Practice Book § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 6th day of July, 1998.
CT Page 8259
William B. Lewis, Judge