[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This case involves a dispute between a borrower and a mortgage broker. The plaintiffs are Stephen Tyree and Caroline Tyree, residents of Wilton. The defendant Welfleet National Mortgage, LLC (Wellfleet) is a mortgage broker. This defendant's principal officer is an individual defendant, John Masanotti. The plaintiff filed an amended complaint dated November 29, 1995, which contained four counts. In the first count, the plaintiffs allege that in connection with their purchase of a home in Wilton, they retained the services of the defendants who promised that they would obtain a mortgage loan for the defendants in the amount of $423,470 at an interest rate of 5.75 per cent; that the plaintiffs paid the defendants a fee of $1,350; that the only mortgage that the defendants obtained was for 7 per cent interest, but the defendants promised that they would get that rate reduced at some time after the closing; that the plaintiffs relied on this promise and went ahead with the closing but that the rate of interest was never reduced; and that the individual defendant, Masanotti, is personally liable to the plaintiffs CT Page 8556 because he exercised complete dominion and control over the corporate defendant which, was a "mere instrumentality" of the individual defendant.
In the second count, the plaintiffs allege that the defendants committed fraud in that they knew that they could not procure a mortgage loan for 5.75 per cent but represented to the plaintiff that they could do so; that the plaintiffs relied on this representation and waived the mortgage contingency clause in their contract and proceeded to close; and that they were damaged by paying a higher interest rate than promised. In the third count, the plaintiffs claim that the defendants violated General Statutes § 42-110a et seq., the Connecticut Unfair Trade Practices Act (CUTPA), by "habitually" telling their customers that they can procure mortgage interest rates that are lower than the actual rates, the fallacy of which the customers do not learn until the closing. In the fourth count of the complaint, the plaintiffs allege that the defendants violated both General Statutes § 36a-678 and 15 United States Code 1638(b)(2) by failing to disclose to the plaintiffs the true interest rate of the mortgage note. The plaintiffs seek money damages, double damages, punitive damages and attorneys fees.
The answer filed by the defendants denied the material allegations of, the complaint, and asserted three "affirmative" defenses. In the first such defense, the defendants claim that the plaintiffs failed to mitigate damages. In the second defense, the defendants contend that the plaintiffs could not reasonably believe that they could obtain a mortgage rate of 5.75 per cent since the closing took place after the date of closing contained in the mortgage commitment letter. In the third defense, the defendants claim that because of the late closing, the plaintiffs are estopped from claiming damages.
The case was referred to Attorney Kenneth B. Povodator, an attorney trial referee, in accordance with General Statutes §52-434 (a) and Practice Book § 19-2. The referee conducted a trial and then submitted a report pursuant to Practice Book §19-4. The referee made the following findings of facts: (1) the plaintiff Stephen Tyree met with the defendant John Masanotti on March 17, 1994, at which time Tyree submitted paperwork for a "rate lock" of 5.75 per cent interest, which would be operative for 60 days after issuance by the mortgage lender, Pawlings Savings Bank; (2) the plaintiffs paid the defendants $1,350; (3) shortly after the application was submitted, Pawlings Savings CT Page 8557 Bank advised the plaintiffs that it would issue mortgages only at the prevailing rate, which was not at the "rate lock" figure of 5.75 per cent interest, and sent a commitment letter dated June 13, 1994 to the plaintiffs indicating interest at 7 per cent, the prevailing rate, said commitment to expire on July 28, 1994, before the projected closing date; (4) Masanotti reasonably believed that he could obtain a 5.75 per cent interest rate for the plaintiffs; (5) the mortgage contingency clause in the contract expired on August 15, 1994; (6) the closing took place on August 4, 1994, and the plaintiff obtained a loan at 7 per cent interest, at which time the defendants represented that they would attempt to obtain a refinance with a lower rate, but their efforts were unsuccessful; (7) the plaintiffs did not present any credible evidence warranting the so-called "piercing of the corporate veil;" (7) the plaintiffs failed to prove what the difference was between a three-year mortgage loan at seven per cent and the same loan at 5.75 per cent interest, except to the extent of $453.27, which was the difference for the first month of the loan because (i) the document presented to prove damages was rejected as hearsay; (ii) the figures submitted by the plaintiffs did not include any escrow for taxes; (iii) there was no showing regarding the amounts to be paid against principal; and (8) the defendants had expressed some willingness to use the fee of 1.375 points, $5,981.25, to attempt to obtain a loan for the plaintiffs with a lower interest rate.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the plaintiffs had proved that the defendants had breached their agreement to try to obtain a mortgage loan for the plaintiffs at a rate less than 7 per cent; (2) the plaintiffs had failed to prove any fraudulent misrepresentations by the defendants; (3) the plaintiffs had failed to "pierce the corporate veil" based on the allegation that Masanotti exercised total control and dominion over the corporation, viz., the so-called "instrumentality" rule; (4) the plaintiffs had failed to prove that any of the so-called truth in lending statutes had been violated or that such statutes applied to the facts of this case; (5) the plaintiffs had failed to prove that the defendants had engaged in unethical or unscrupulous conduct as prescribed by CUTPA; and (6) the plaintiffs were entitled to recover from the corporate defendant, but not Masanotti, the sum of $453.27, the difference in interest rates for the first month only.[1]
Pursuant to Practice Book § 19-12, both the plaintiffs CT Page 8558 and the defendants moved to correct the referee's report.[2]
The plaintiffs asked the referee to: (1) include in his report the fact that the defendants' letter to the plaintiffs dated June 14, 1994, did not contain any reference to a specific interest rate; (2) agree that the plaintiffs had proven with precision the difference in payment over the course of three years between a mortgage with 5.75 per cent interest and one with 7.0 per cent interest, which difference was $16,359; and (3) amend his report to find that the defendants violated CUTPA in that they deceived the plaintiffs by causing them to believe that the defendants would provide a mortgage with an interest rate of 5.75 per cent, which constituted at least an innocent misrepresentation on the part of the defendants.
The attorney trial referee declined to make any substantive corrections in his report or recommendations but did note that: (1) the letter from the defendants to the plaintiffs dated June 14, 1994, did not contain any representations regarding the interest rate to be charged by Pawlings Savings Bank; (2) his determination that damages had not been adequately proven was not changed as a result of the plaintiffs' claim that the testimony of plaintiff Caroline Tyree regarding escrow payments was in error; and (3) CUTPA was not violated by what the referee described as "sloppiness or inattentiveness" on the part of the defendants, and that there was no evidence of fraud or other "culpable misconduct."
The defendants also moved to correct the report and sought a finding that: (1) the defendants did not breach the contract alleged in the complaint, viz., that they promised to obtain a mortgage for the plaintiffs with 5.75 per cent interest; and (2) the referee's determination that a contract existed based on the defendants' failure to advise the plaintiffs that a 5.75 per cent interest mortgage was not available, keeping the $5,981.25, which was paid to lock in a lower interest rate, and reassuring the plaintiffs that a mortgage with the lower rate would be available, is erroneous because such a contract was not alleged by the plaintiffs in their complaint.
The attorney trial referee denied the defendants' motion to correct except that: (1) he agreed that one of his factual findings needed "greater specificity" and hence added that defendant Wellfleet breached its contract with the plaintiffs by failing to inform them that this defendant was unable to procure a loan with 5.75 per cent interest but failing to return the fee CT Page 8559 that had been tendered by the plaintiffs for the purpose of obtaining such a loan; and (2) clarified a finding by adding that Wellfleet was willing to use some of the money that the plaintiffs had paid as points for a loan to "buy down" another loan to the plaintiffs.
Thus, the referee declined to change his recommendation that judgment enter in favor of the plaintiffs in the amount of $453.27 as to the first count only and also only against the corporate defendant, Wellfleet, and not against the individual defendant, Masanotti.
In accordance with Practice Book § 19-13, both the plaintiffs and the defendants filed exceptions to the referee's report.[3] The exceptions by the plaintiffs relate to the referee's refusal to make the corrections to his report sought in the motion to correct, and specifically, to the referee's refusal to: (1) award damages to the plaintiffs in the amount of $16,359.67, the difference in payments over the course of three years of the loan that the plaintiffs actually obtained at 7 per cent as compared with the 5.75 per cent loan that they wanted; and (2) award damages based on CUTPA.
The exceptions filed by the defendants refer to the ruling by the referee that the defendants breached their contract to advise the plaintiffs that a 5.75 per cent loan was unavailable and that they refused to return to the plaintiffs the rate lock deposit. The defendants contend that the plaintiffs did not plead such a contract in their complaint, but rather referred to an alleged promise to obtain a 5.75 per cent interest rate for them.
The plaintiffs filed objections to the report as authorized by Practice Book § 19-14.[4] The objections filed by the plaintiff relate to the same points covered in their exceptions: (1) that the plaintiffs proved their damages in a precise fashion based on the difference between the interest rate they desired, and the one at 7 per cent that they actually obtained; (2) that they are entitled to recover under CUTPA.
The defendant Wellfleet also filed objections to the referee's report. These objections relate to the alternative theory of measuring damages which was discussed in footnote 1 above, and to its contention that this defendant was found to have breached a contract that was not pleaded by the plaintiffs in their complaint. CT Page 8560
This court's scope of review of an attorney trial referee's report was reiterated by the Supreme Court in Elgar v. Elgar,238 Conn. 839, 848-49, 679 A.2d 937 (1996). The court held that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.). See also TDS Painting and Restoration,Inc. v. Copper Beach Farm, Inc., 45 Conn. App. 743, 751,669 A.2d 173, cert. denied, 243 Conn. 908,701 A.2d 338 (1997) (the court "cannot find additional facts or reject others unless a material fact has been found without evidence").
Pursuant to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first task is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id.
Apparently a transcript of the evidence was ordered and received by counsel because there are references to the transcript in the briefs, but the file does not contain a copy. Thus, as was said in Beizer v. Goepfert, 28 Conn. App. 693,706-07, 613 A.2d 1336, cert. denied 224 Conn. 901, 615 A.2d 1049
(1992), cert. denied, 507 U.S. 973, 113 S.Ct. 1416,122 L.Ed.2d 786 (1993), it may be assumed that such a transcript is not "crucial" to the resolution of the case. This assumption is applicable to this case because the facts are not in dispute, but only the inferences to be drawn from the facts and the application of the law to the facts.
The plaintiffs contend that the referee miscalculated damages. They agree, however, that the method of calculation CT Page 8561 which they now espouse was not presented at the trial. The calculation regarding the 5.75 per cent brief surfaced in their post-trial brief, and the calculation regarding a 7 per cent loan was discussed in the exceptions filed by the plaintiffs. It seems clear that evidence of damages in the amount of $16,359 was not presented by the plaintiffs at the trial. Thus, the referee was justified in awarding damages based on the evidence that was presented. The plaintiffs contend also that the referee erred in finding that the defendants did not violate CUTPA. This is a factual finding that should not be disturbed by this court. Tarkav. Filipovic, 45 Conn. App. 46, 55, 694 A.2d 824, cert. denied,242 Conn. 903, 697 A.2d 363 (1997).
The defendant Wellfleet claims that the referee found that it breached a contract that was not alleged in the complaint. The complaint stated that the defendants promised to obtain a mortgage loan for them with interest at 5.75 per cent. The referee, however, determined that there was an "evolution" from the original obligation to obtain a loan at a specific rate to an obligation to try to obtain such a loan. The referee explained that by not advising the plaintiffs that a loan of 5.75 per cent interest was not obtainable, and by not returning the rate lock deposit, the defendant WelIfleet "implicitly represented that they had performed by obtaining the rate lock, or . . . the loan they would ultimately obtain would be at 5.75%." This finding of breach of contract is fact-bound and is encompassed within the scope of the allegations of breach of contract in the complaint. Moreover, the findings of fact in a contract action such as this case should be overturned "only when they are clearly erroneous."Wilcox Trucking, Inc. v. Mansour Builders, Inc.,20 Conn. App. 420, 425, 567 A.2d 1250, cert. denied, 214 Conn. 804,573 A.2d 318 (1989).
Based on the standard of review outlined in Elgar v. Elgar,
supra, 238 Conn. 848-49, the referee's report and recommendations are accepted. No material error in the referee's report has been found, and there is no other sufficient reason for rendering the report unacceptable. Practice Book § 19-17. Judgment may enter in favor of the plaintiffs against Wellfleet only for $453.27. Costs are to be taxed by the office of the chief clerk in accordance with General Statutes § 52-257 and Practice Book § 18-5.
So Ordered. CT Page 8562
Dated at Stamford, Connecticut, this 10th day of July, 1998.
Decision entered in accordance with the foregoing.
All pro se parties and attorneys of record ratified this date. 7/10/98
William B. Lewis, Judge