[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Jeffery P. Guice, filed a complaint containing three counts directed against the defendant, Milk and Cookies, Inc., d/b/a ETV Network. In the first count, the plaintiff alleges that on or about September 11, 1997, he was hired by the defendant pursuant to a written employment agreement to be the president of the defendant corporation's subsidiary known as National Retail Liquor Network (NRLN). The plaintiff also contends in this first count that he was promised a 25% commission on all advertising sales "initiated and contracted for" by the plaintiff, a monthly guaranteed "draw against future commissions of $10,000, "reimbursement of travel and entertainment-expenses and a monthly payment of $1,500 to cover other advertising expenses. The plaintiff further alleges that the defendant breached the contract because it refused to pay him either the wages that were due or the reimbursement for expenses in the approximate total amount of $43,000.
In the second count, the plaintiff claims that the defendant violated General Statutes § 31-71c(a), which provides that if an employee voluntarily terminates his employment "the employer shall pay the employee's wages in full not later than the next regular payday.. In the third count, the plaintiff contends that the conduct of the defendant constitutes a violation of General Statutes § 42-110b et seq., the Connecticut Unfair Trade Practices Act (CUTPA), which prohibits engaging "in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce."
The defendant in its answer admitted that it had hired the plaintiff pursuant to a written contract dated September 11, 1997, but denied that it owed any money to the plaintiff. The case was referred for trial to Attorney Mary E. Sommer, an attorney trial referee, in accordance with General Statutes § 52-434 (a) and Practice Book § 19-2A. The referee conducted a trial and submitted a report finding the following facts: (1) the contract of employment provided for a "monthly guaranteed CT Page 10465 draw of $10,000 gross against future commissions derived from all NRLN advertising sales initiated and contracted by" the plaintiff for a minimum of 12 months; (2) as a condition of the obligation of defendant to pay the plaintiff $10,000 a month as a guaranteed draw, the plaintiff was required to produce a retail contract for in-store video or point of purchase marketing of alcoholic beverages with a test period of at least twelve weeks at a minimum of 30 locations; (3) the plaintiff operating as NRLN entered into an agreement in October, 1997, with the Great Atlantic Pacific Tea Company (A P) for such in-store video marketing at 30 different locations; (4) the contract with A P was for twelve weeks but provided that it was automatically extended for an additional 36 months unless canceled in writing by either party; (5) the contract with A P was not canceled and hence extended for 36 months; (6) the plaintiff continued his efforts to promote in-store retail marketing programs for the benefit of the defendant through and including August of 1998; (7) the defendant failed to make payments of the guaranteed draw for the four months of May through August, 1998, or to reimburse the plaintiff for his business expenses; (8) the business expenses submitted to the defendant were legitimate reimbursable expenses and were never objected to or questioned by the defendant; (9) on or about May 26, 1998, a third-party vendor or supplier, Jeffery Young, contacted the plaintiff seeking payment from him for services rendered on behalf of the defendant, and the plaintiff advised this vendor to contact the defendant directly because "he had ceased employment with the defendant on or about May 13, 1998;" and (10) the defendant did not offer any testimony by one of its officers or employees but rather presented only one witness whose knowledge of the facts of this case was minimal.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the plaintiff had proved that he had a "valid, enforceable contract" with the defendant; (2) the only condition attached to the contract was the requirement that the plaintiff produce for the defendant an in-store video marketing agreement with certain parameters which the plaintiff accomplished by virtue of his company's contract with the A P; (3) there was "no further condition attached to the contract;" (4) the notification to Young, the third-party vendor, by the plaintiff that he had terminated his employment with the defendant was only aimed at avoiding any liability on his part to such third parties for work performed for the benefit of the defendant; (5) the plaintiff performed his obligations under the contract in "good faith" but the defendant refused to honor its obligations; (6) on his first count alleging breach of contract, the plaintiff is entitled to recover damages in the amount of $40,000 representing the four months that the defendant refused to pay him the guaranteed draw, plus $2,942 for reimbursement for business expenses; (7) as to the second count regarding unpaid wages, the plaintiff should be awarded double damages, or $80,000, because the CT Page 10466 defendant exhibited "bad faith, arbitrariness, or unreasonableness in refusing to pay the plaintiff what was due him under the contract of employment; (8) as to the third count, claiming a violation of CUTPA, judgment should enter in favor of the defendant because the controversy involved a dispute between an employer and its employee; and (9) judgment should therefore enter for the plaintiff to recover $40,000 of unpaid wages, doubled to $80,000, plus $2,942 representing unpaid reimbursement for legitimate business expenses incurred by the plaintiff, for a total recovery of $82,942. In addition, as authorized by General Statutes § 31-72, the plaintiff is entitled to recover reasonable attorney's fees as established at a future hearing by the attorney trial referee.
As authorized by Practice Book § 19-14, as amended effective January 1, 2000,[1] the defendant filed objections to the report of the attorney trial referee. The objections by the defendant can be summarized as follows: (1) the plaintiff has no right to obtain a draw for the four months starting with May, 1998, because the plaintiff voluntarily terminated his employment with the defendant in that month and the draw was conditioned upon actually working on behalf of the defendant for each of the four months in question; (2) the recommendation regarding business expenses is in error because such expenses could only be incurred after the prior approval of the defendant; and (3) the record does not contain any evidence of sufficient bad faith to justify the imposition of double damages for unpaid wages as authorized by General Statutes § 31-72.
This court's scope of review of an attorney trial referee's report was reiterated by the Supreme Court in Elgar v. Elgar, 238 Conn. 839,848-49, 679 A.2d 937 (1996). The court held in that case that: "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of ..attorney trial referees. See Practice Book § 443 [currently § 19-17] . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. ..[A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses.. A finding of fact is clearly erroneous when there is no evidence in the record to support it ..or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.). See also TDS Painting Restoration, Inc. v. CopperBeech Farm. Inc., 45 Conn. App. 743, 751, 669 A.2d 173, cert. denied,243 Conn. 908, 701 A.2d 338 (1997) (the court "cannot find additional facts or reject others unless a material fact has been found without evidence."). CT Page 10467
Pursuant to Elgar v. Elgar, supra, 238 Conn. at 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first task is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id. The defendant attacks the referee's finding of fact that the plaintiff continued working for the defendant through and including August, 1998. The issue is whether there is support in the record for this factual finding. The plaintiff points out that the transcript of the trial before the attorney trial referee contains evidence that the plaintiff did not terminate his employment in May, 1998, as the defendant claims.[2]
The second issue is whether even if the plaintiff did cease his employment with the defendant in May, 1998, as claimed by the defendant, he was nevertheless entitled to a full twelve months of compensation or draw because he brought in the A P contract. According to the referee, one such contract was the only condition in the contract.
In Tallmadge Bros., Inc. v. Iroquois Gas Transmission System L.P.,252 Conn. 479, 746 A.2d 1277 (2000), the Supreme Court discussed the interpretations of written contracts and stated that when the "interpretation of a contract requires a search for the intent of the contracting parties" it becomes a question of fact for the trier of fact. Id., 494. On the other hand, if the language of the contract is unambiguous and contains "definitive contract language," Id., 495, particularly when the contract is commercial in nature and involves an agreement between "sophisticated commercial parties with relatively equal bargaining power," Id., 496, the interpretation of the contract "is a question of law." Id., 495.
The language at issue in this contract provides that the defendant guarantees: "A 25% commission after costs . . . on all NRLN advertising sales initiated and contracted by Mr. A monthly "guaranteed' draw of $10,000 gross against future commissions derived from all NRLN advertising sales initiated and contracted by Mr. Guice. This draw will by paid to Mr. Guice for a minimum period of twelve months . . . beginning on September 15, 1997 and continuing indefinitely, upon the delivery of a retail contract for a 90 day test with a minimum of thirty locations."
To the extent that the wording of this contract is ambiguous, the trier of fact was obliged to ascertain the intent of the contracting parties. The attorney trial referee determined that the only condition of the obligation of. the defendant to pay to the plaintiff $10,000 a month for twelve months was the delivery of "a retail contract for a 90 day test CT Page 10468 with a minimum of thirty locations, "a condition which the plaintiff fulfilled. On the other hand, if the language of the contract is deemed to be definitive, and representing the final repository of the understanding of two sophisticated business entities, and hence a matter for the court, the same result follows. The defendant, who prepared the contract, could readily have provided that the monthly guaranteed draw was contingent on continued employment, but it did not do so. The only condition for the draw is initiating or obtaining a retail contract with certain parameters. Even if continued employment had been a prerequisite to the continuance of the draw, the defendant made it impossible for the plaintiff to continue his employment by its failure to reimburse him for business expenses.
The next issue concerns whether the defendant had to approve in advance any business expenditure by the plaintiff. In this regard, the contract provides that: "Whenever necessary, Mr. Guice will travel and entertain potential NRLN customers with the [defendant's] approval." The contract also provided that the defendant would reimburse the plaintiff for the installation and maintenance of a telephone and fax line at his home and would pay to the plaintiff $1,500 as a monthly budget for postage and promotional advertising. The reference to prior approval seems to be limited to entertaining customers, including necessary travel. Furthermore, the transcript indicated that the plaintiff sent many detailed requests for reimbursement of expenditures and there is no indication that the defendant ever objected to any such expenditures.[3]
The defendant simply refused to reimburse the plaintiff. Moreover, in its closing argument at the trial, counsel for the defendant stated: "The defendant is not disputing the fact that the last three thousand dollars in expenses claimed by the plaintiff may be owed."
The final issue involves the referee's finding of sufficient bad faith on the part of the defendant to justify the imposition of statutory double damages for failure to pay wages when due. As indicated in Butlerv. Hartford Technical Institute, Inc., 243 Conn. 454, 704 A.2d 222
(1997), General Statutes § 31-72, which provides for double damages for unpaid wages, also requires proof of "bad faith, arbitrariness or unreasonableness." Id., 470. The referee made a specific finding of bad faith, and the record contains sufficient evidence to demonstrate bad faith. For instance, the defendant refused numerous requests to pay the guaranteed draw and to reimburse the plaintiff for out-of-pocket expenses, despite the plaintiff having fulfilled the one condition imposed on the twelve months draw. Furthermore, the defendant did not pay the $1,500 it promised for expenditures, thus causing the plaintiff to use his own money on behalf of the defendant. These facts support the referee' s recommendation that double damages should be awarded. CT Page 10469
"Great deference is given to the trial court's findings [regarding the facts of a case] because the trial court is responsible for weighing the evidence and determining the credibility of witnesses." Beizer v.Goepfert, 28 Conn. App. 693, 704-05, 613 A.2d 1336, cert. denied,224 Conn. 901, 615 A.2d 1044 (1992), cert. denied, 507 U.S. 973,113 S.Ct. 1416,122 L.Ed.2d 786 (1993). It is clear that the referee chose to believe the testimony offered by the plaintiff regarding when he ceased work and the circumstances surrounding reimbursement for out-of-pocket expenses. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely her function as a fact finder. The resolution of conflicting factual claims falls within the province of the trial court." Nor'easter Group, s Inc. v. ColossaleConcrete, Inc., 207 Conn. 468, 473, 542 A.2d 692 (1988). "The finder of fact is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony." Beizer v. Goepfert, supra, 28 Conn. App. at 706. Therefore, this court is bound to accept the factual findings by the referee. Tarka v. Filipovic, 45 Conn. App. 46,54, 694 A.2d 824, cert. denied, 242 Conn. 903, 697 A.2d 363 (1997).
As noted by the attorney trial referee, she did not hear any evidence as to the reasonableness of attorney's fees and therefore this case is remanded to the referee for the sole or limited purpose of reporting on the amount of attorney's fees that should be awarded to the plaintiff. of course, the parties may be able to stipulate to an amount without the defendant waiving its claim that no attorney's fees should be awarded at all because of the plaintiff's alleged failure to prove a violation of General Statutes § 31-71c. In the absence of such an agreement, the referee, with the assistance of the Case Flow office, should schedule a hearing on this subject as soon as possible.
In conclusion, no material error in the report has been found, and there is no other sufficient reason for rendering the report unacceptable. See Practice Book § 19-17(a). The factual findings of the referee find support in the record, including when the plaintiff ceased working for the defendant, how out-of-pocket expenses were handled, and whether the defendant exhibited bad faith and unreasonableness in refusing to pay the plaintiff his guarantee. The only legal issue involves interpreting the wording of the contract of employment, assuming the language was definitive. The court undertook this task and agrees with the referee that there was only one condition attached to the obligation of the defendant to pay the guaranteed draw for twelve months, and the plaintiff fulfilled that condition. Therefore, based on the standard of review outlined in Elgar v. Elgar, supra, 238 Conn. at 848-49, the referee's report is accepted as is her recommendation regarding the award of $82,942 to the plaintiff and CT Page 10470 judgment may enter in that amount.
Costs should be awarded to the plaintiff by the office of the Chief Clerk.
Dated at Stamford, Connecticut, this 9th day of August, 2000.
LEWIS, J.