[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is a breach of contract action involving a claim by the plaintiff, David Walshin, a medical doctor specializing in psychiatry, for compensation allegedly due him from his former employer, the defendant, CT Page 2602 New England Rehabilitation Management Co., Inc. (N.E. Rehab). N.E. Rehab is in the business of staffing and operating rehabilitation hospitals.[1]
In his complaint, the plaintiff alleges that on May 31, 1995, he and N.E. Rehab signed an agreement which he became an assistant medical director at St. Joseph's Hospital in Stamford. The plaintiff further alleges that he was hired for an initial term of one year, July 10, 1995, to July 9, 1996, at an annual base salary of $140,000. The plaintiff also claims that the term of one year was automatically renewable but could be canceled by either party. It is also claimed that the plaintiff was entitled to a bonus of "40% of collections for direct plaintiff services in excess of $132,000" for each term. The plaintiff contends that he continued to work after the end of the first one year period, but that he was advised by his employer in February, 1997, that his employment would not be renewed after July 9, 1997 for a third year. The plaintiff further claims that as of that date, he had "patient billings"exceeding $132,000 and that by November of 1997, the defendants had collected an additional $80,000, of which the plaintiff was entitled to 40%. The plaintiff claims double damages and attorney's fees pursuant to General Statutes § 31-72.[2]
The defendants denied that they owed any money to the plaintiff. In addition, the defendants filed special defenses that the plaintiff had been paid in full and that he was not entitled to recover any money because of the doctrine of accord and satisfaction.
The case was referred for trial to Attorney John F. Carberry, an attorney trial referee, in accordance with General Statutes § 52-434(a) and Practice Book § 19-2A. The referee conducted a trial and submitted a report finding the following facts: (1) the contract between the plaintiff and the defendant provides that: "For each Annual Term, should your collections from direct patient services exceed $132,000, you will be entitled to be paid 40% of such excess. Payments made pursuant to this Clinical Incentive Compensation shall be made within ninety (90) days of the end of each Annual Term or termination of this Agreement;" (2) because the collections as of July 10, 1996, the end of the first term, were low, the employer agreed to extend the time period to include collections through November, 1996, as a result of which the plaintiff received a bonus of approximately $21,000; (3) about a month before his employment was due to terminate in 1997, the plaintiff wrote to his employer seeking a bonus for "accounts receivables" so that the employer could demonstrate its "appreciation for my efforts," a request which the defendants rejected; (4) the plaintiff received a bonus of approximately $50,000 for collections as of the end of his employment on July 9, 1997; and (5) the plaintiff seeks in this action to receive a bonus for money actually collected and received by the defendants after his employment CT Page 2603 terminated.
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the contract clearly states the plaintiff's bonus is measured "on dollars brought in, not bills sent out;" (2) the contract language is "unambiguous;" (3) the referee indicated that the basis for his conclusion that the defendants should prevail were: (a) the contract provided that the bonus would be paid within a certain number of days after the end of the term or the termination of employment, which indicates that the last day of employment "was a cutoff date" for the bonus; (b) after the first annual term ended, the plaintiff requested and the defendants voluntarily agreed to extend the collection period for several more months in order to obtain more accounts receivable; (c) the plaintiff's letter in June of 1997 to his employer did not indicate that the plaintiff believed he was entitled to moneys received after he left, but rather requested the extra money so that his employer would be manifesting its appreciation" for his efforts; and (d) although the plaintiff made several changes to the contract before returning it to the defendants, he did not attempt to change the wording of the bonus provision. The referee's report was mailed to counsel by a clerk of this court on September 15, 2000.
As authorized by Practice Book § 19-14, on October 16, 2000, the plaintiff filed objections[3] to the attorney trial referee's report. The objections are: (1) contrary to the referee's conclusion, the contract between the plaintiff and the defendants was in fact ambiguous because the contract can be read in several ways, including to mean that the plaintiff is entitled to a bonus for collections received by the employer after his employment terminated; (2) the contract was drafted by the defendants and ambiguities arising from the fact that it does not specifically refer to collections received "during" the term of employment must be construed against the defendants; (3) it is not logical to believe that the plaintiff would have continued his efforts on behalf of his employer until the last day of work, as he did after receiving notification of termination, because the chances of collecting receivables diminished the closer to July 9, 1997, the last day of work; (4) the provision regarding payment by the defendants within ninety days after the end of the term, or termination of employment, indicated that the plaintiff was entitled to accounts receivable collected after the plaintiff's job ended; (5) the plaintiff was orally advised by his employer that his bonus would not be limited to collections made during the term of his employment; and (6) the plaintiff was entitled to $25,903, representing 40% of $64,758 collected by the end of October, 1997, doubled to $51,806, because of "bad faith" on the part of the defendants. On October 26, 2000, the defendants objected to the consideration of the plaintiff's objections to the referee's report CT Page 2604 because they were not filed within twenty-one days "after the mailing of the report to the parties or their counsel by the clerk" as required by Practice Book § 19-15.
This court's scope of review of an attorney trial referee's report was reiterated by the Supreme Court in Elgar v. Elgar, 238 Conn. 839,848-49, 679 A.2d 937 (1996). The court held in that case that: "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 [currently § 19-17]. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.).
Pursuant to Elgar v. Elgar, supra, 238 Conn. 845-46, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id. The referee's factual conclusions in this case are essentially undisputed. The contract is in evidence and it is clear that the plaintiff did not get paid for any funds received by the defendants after the termination of his employment on July 9, 1997.
What are in dispute are first, the significance of the late filing by the plaintiff of his objections to the referee's report, and second, the interpretation of the contract between the parties. As to the timeliness of the objections, it is clear from Rowan Construction Corporation v.Hassane, 213 Conn. 337, 342, 567 A.2d 1210 (1990), that a late filing may be waived because it is a "procedural defect waived by the defendant's failure to object to the untimeliness in the trial court." The plaintiff filed his objections to the report on October 16, 2000, and the defendants filed objections to the timeliness thereof on October 26, 2000, which is deemed to be a timely objection. Practice Book § 19-18
provides that the time for filing objections may be extended by the court "for good cause shown." The plaintiff did not show any such good cause in this case but candidly agreed that it was based on a mistaken belief that motions to correct were required. Pursuant, however, to Practice Book § 19-12, effective January 1, 2000, such a motion is improper. CT Page 2605
The significance of not reviewing the plaintiff's objections in this case is, however, at most minimal because the court must still "render whatever judgment appropriately follows, as a matter of law, from the facts found by the attorney trial referee." Anastasia v. Beautiful YourHair Designs, Inc., 61 Conn. App. 471, 475, ___ A.2d ___ (2001). To the same effect is Practice Book § 19-17 ("The court shall render such judgment as the law requires upon the facts in the record.")
Tallmadge Brothers, Inc. v. Iroquois Gas Transmission System, L.P.,252 Conn. 479, 746 A.2d 127 (2000), holds that in dealing with a contract, the initial inquiry is whether the wording of the contract is ambiguous or unambiguous. "Although ordinarily the question of contract interpretation, being a question of intent, is a question of fact . . . [where] there is definitive contract language, the determination of what the parties intended by the their contractual commitments is a question of law." (Internal citations omitted.) Id., 495.
In this present case, the attorney trial referee determined that the contract language was unambiguous and definitive. If that is correct, then this makes "the interpretation of that language a question of law subject to plenary review by this court." Tallmadge Brothers, Inc. v.Iroquois Gas Transmission System. L.P., supra, 252 Conn. 495. Under that theory, the use of the word "collection" in the contract is arguably sufficiently definitive to require a judgment for the defendants as a matter of law since the accounts receivable in question were not "collected" or received until after the plaintiff's employment had terminated.
The plaintiff's contention, however, that the agreement is ambiguous is plausible because the failure to use the phrase "during your term of employment" after the word "collected" leaves some doubt as to whether the plaintiff is entitled to accounts receivable collected "within ninety (90) days of the end" of the plaintiff's employment. This in turn would require an inquiry into the intention of the parties which "is a question of fact." Tallmadge Brothers, Inc. v. Iroquois Gas Transmission System,L.P., supra, 252 Conn. 495.
If this interpretation of the contract is correct, it becomes a matter for the fact finder to decide. The determination of the intent of the parties to an agreement involves a determination of the credibility of the witnesses. "Great deference is given to the trial court's findings [regarding the facts of a case] because the trial court is responsible for weighing the evidence and determining the credibility of witnesses."Beizer v. Goepfert, 28 Conn. App. 693, 704-05, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992), cert. denied, 507 U.S. 973, CT Page 2606113 S.Ct. 1416, 122 L.Ed.2d 786 (1993). It is clear that the referee chose to believe the testimony offered by the defendants and not that of the plaintiff regarding their intent about the collection of accounts receivable." In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely her function as a fact finder." Nor'easter Group, Inc. v. Colossale Concrete, Inc., 207 Conn. 468,473, 542 A.2d 692 (1988). "The finder of fact is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony." Beizer v. Goepfert, supra, 28 Conn. App. 706. Therefore, this court is bound to accept the factual findings by the referee. Tarka v. Filipovic, 45 Conn. App. 46, 54, 694 A.2d 824, cert. denied, 242 Conn. 903, 697 A.2d 363 (1997).
In this regard, the referee gave several specific and logical reasons why the plaintiff was entitled only to money collected during the term of employment and not thereafter, as summarized previously in this decision.[4] In addition, of course, the referee relied on the use of the word "collected." Therefore, if the contract is unambiguous and definitive, this court concludes that as a matter of law, the plaintiff is not entitled to compensation relating to the collection of accounts receivable after his employment ended. If the language is ambiguous, as the court is inclined to believe, the facts that the referee found do indeed logically support his ultimate legal conclusion that the plaintiff is not entitled to a recovery in this case.
Judgment may enter for the defendants on the complaint as recommended by the attorney trial referee because no material error in the report has been found, and there is no other sufficient reason for rendering the report unacceptable. Practice Book § 19-17(a). Costs are to be taxed in favor of the defendants by the chief clerk of this court in accordance with General Statutes § 52-257 and Practice Book § 18-5.
So Ordered.
Dated at Stamford, Connecticut, this 20th day of February, 2001.
William B. Lewis, Judge