NEW MILFORD BLOCK AND SUPPLY CORPORATION
*v.* N. GRONDAHL AND SONS, INC., ET AL.
(AC 17480)

O'Connell, C. J., and Foti and Spear, Js.

Argued September 25, 1998—officially released January 5, 1999

*Thomas J. Londregan*, with whom, on the brief, were *Ralph J. Monaco* and *Brian K. Estep*, for the appellant (defendant city of New London).

*John M. Gasidlo*, for the appellee (plaintiff).

*Opinion*

O'CONNELL, C. J. This is the defendant city of New London's (city) appeal from the trial court's $22,319.59 judgment rendered against it in accordance with the report of an attorney trial referee. The city claims that the trial court should not have accepted the referee's report because it incorrectly (1) relied on a theory of ratification and (2) found ratification without sufficient evidence. We reverse the judgment of the trial court.

The plaintiff, New Milford Block and Supply Corporation, initiated this action against the defendants N. Grondahl and Sons, Inc. (Grondahl), the general contractor, Capasso Enterprises (Capasso), the masonry subcontractor, and the city of New London, seeking payment for materials sold and delivered by the plaintiff for the city's Ocean Beach Park bathhouse project. The city denied that it had responsibility to pay for the materials and, by special defense, alleged that it had previously paid the defendants Grondahl and Capasso for the subject materials.

On September 17 through 20, 1996, the case was tried before an attorney trial referee. He issued his findings on June 4, 1997, and on July 15, 1997, the trial court rendered judgment in accordance with his report. Because only the city appeals, we limit our discussion to the issues and findings of the referee that are relevant to the city.

On March 4, 1991, Grondahl, as general contractor, entered into a written contract with the city to supply the labor and materials necessary for the city's Ocean Beach Park bathhouse renovation project. Under the contract, Grondahl was required to hire and pay subcontractors and to pay for all materials used on the site. Capasso was the subcontractor responsible for the masonry materials and labor. On May 23, 1991, Grondahl and Capasso signed a joint payment agreement with the plaintiff in which they agreed to pay the plaintiff jointly and severally all sums due for the plaintiff's supply of materials for the project.

In April, 1992, the city exercised its contractual right to terminate the contract with Grondahl and, thereafter, the city entered into subcontracts with several subcontractors, including Capasso, to complete work on the project. Under its contract with the city, Capasso agreed to supply all labor and materials. On May 25, 1992, Capasso billed the city for labor and "materials on site," which the city paid in full. The attorney referee found that the "materials on site" included the masonry material that is the basis of the plaintiff's complaint in this case, and that the city had paid Capasso and Grondahl for the materials.

The plaintiff claimed a breach of an oral contract on the basis of the oral representations of Roger Early, an employee of the city, who at the time in question was the manager of Ocean Beach Park, and later by the oral representations of Barte Ferrante, a city employee who became the acting project manager. The referee found, however, that neither Early nor Ferrante had express or implied authority to bind the city and, accordingly, no oral contract had been created. Notwithstanding that finding, the referee concluded on the basis of the city's retention and use of the materials that the city had

ratified the allegedly unauthorized actions and representations of Early and Ferrante, thereby obligating itself to pay the plaintiff for the materials.

The attorney referee determined that Grondahl was liable for the materials shipped to the job site while it was general contractor and Capasso was liable for the materials shipped after Grondahl was terminated. He further determined that, if Grondahl and Capasso did not pay the plaintiff, the city was "secondarily responsible" to pay for all of the materials.[1]

On June 24, 1997, approximately one week beyond the time limit for filing such a motion, the city moved to correct the portion of the referee's report that held the city secondarily liable under a theory of ratification. The trial court denied the city's motion on June 25, 1997. The city filed an objection to the motion for judgment on the report and acceptance of the report, which motion was also denied by the trial court on July 25, 1997. The city commenced this appeal seeking reversal of that portion of the judgment that found it liable to the plaintiff for the materials on the theory of ratification.

On appeal, the city contends that (1) the attorney referee erroneously considered the theory of ratification because it was not pleaded in the plaintiff's complaint but was first put forth in the plaintiff's posttrial brief and (2) even if ratification could have been considered by the referee, there was insufficient evidence to support such a finding.

We first consider the plaintiff's argument that ratification is not properly before us because the city did not timely raise it and is thus foreclosed from raising it on appeal. Practice Book §§ 19-14, 19-15 and 19-12 clearly set forth that the time for filing a motion to correct a

---

[1] Because of our disposition of this appeal, it is not necessary that we determine whether the doctrine of secondary liability was appropriately applied in this case.

referee's report or to object to the acceptance of a referee's report is two weeks. Because the city's motions were not filed within two weeks of the filing of the referee's report, the trial court overruled the objection and denied the motions as untimely. In oral argument before this court, the city conceded that in the absence of a timely objection to the report, our review is limited to a determination of whether the subordinate facts found by the referee were sufficient to support his ultimate factual conclusions. We agree that we may not consider whether the referee properly considered the theory of ratification and, instead, must limit our review to the second issue on appeal, i.e., whether the subordinate facts found by the referee were sufficient, as a matter of law, to support the conclusion of ratification. *J. M. Rosa Construction Co.* v. *New Haven Redevelopment Agency*, 9 Conn. App. 481, 485, 519 A.2d 1227 (1987); *Morning Star Holding Co.* v. *Kostopoulos*, 12 Conn. App. 593, 595, 533 A.2d 569 (1987).

The legal theory of ratification requires " 'acceptance of results of the act with an intent to ratify, and with full knowledge of all the material circumstances.' " *Botticello* v. *Stefanovicz*, 177 Conn. 22, 28, 411 A.2d 16 (1979); *Gerber & Hurley, Inc.* v. *CCC Corp.*, 36 Conn. App. 539, 542, 651 A.2d 1302 (1995). Additionally, in the case of a municipal corporation, the fact finder must determine that ratification was made by the officer or body originally empowered to make the contract. *John J. Brennan Construction Corp., Inc.* v. *Shelton*, 187 Conn. 695, 712, 448 A.2d 180 (1982).

The attorney referee relied on *Loomis* v. *Fifth School District*, 109 Conn. 700, 704–705, 145 A. 571 (1929), to support his conclusion that "a municipal corporation may be held to have ratified an unauthorized contract by retaining the benefit under circumstances which estop it from denying liability. . . . Liability in these

cases is based upon the fact that the defendants had an opportunity to accept or reject the work and elected to accept it . . . ." (Citations omitted.) In support of his conclusion, the referee found that, although Early and Ferrante had no actual or apparent authority to bind the city to pay for the materials, the city allowed the materials to be incorporated into the project, thereby ratifying their unauthorized representations.

The city argues that the facts found by the referee do not support his conclusions that there was intent to ratify and full knowledge of all of the circumstances by the city or by its duly authorized representatives.[2] Specifically, the city distinguishes this case from *Loomis* because here no one with authority to bind the city authorized receipt or retention of or payment for these materials. The relevant facts found by the referee are set forth in footnote 2. We agree with the city that an examination of the findings does not disclose any factual basis that would support a conclusion of ratification by the city. The only actions that could be construed as displaying an intent to ratify the representations of Early and Ferrante would be subsequent acts by Early and Ferrante themselves, individuals who the referee

---

[2] Specifically, the attorney referee found: "83. Plaintiff's claim against the City of New London is based upon alleged oral representations. 84. Defendant City did not order any of the materials, nonpayment for which is at issue in this action. 85. Neither Early nor Ferrante had *actual* authority to bind defendant City to pay for project materials. 86. No person or entity with authority to bind defendant City made representations or acted in such a manner as to clothe Early or Ferrante with *apparent* authority to bind the City to pay for project materials nor did any such person or entity take any actions that would lead the plaintiff to believe that the City would pay for the block. 87. There was no evidence introduced at trial to show that defendant City had ever taken the requisite action to bind itself to pay the plaintiff for materials supplied to the project. . . . 90. Neither the plaintiff nor any of its agents or employees ever contacted the City Manager, City Council or Ocean Beach Park Board to inquire whether Early or Ferrante had authority to bind the City or as to the procedure necessary for the defendant City to become bound to pay for project materials." (Emphasis in original.)

clearly found did not have the authority to bind the city. The *Loomis* court held that if the individual who made the promises to pay was without the authority to bind the municipality, "he could not of course bind the [municipality] by assuming to ratify his own unauthorized act." *Loomis* v. *Fifth School District*, supra, 109 Conn. 705. Because Early and Ferrante were the only individuals who had the opportunity to make decisions regarding the acceptance and retention of the materials at issue, it cannot be said reasonably that the city or any of its duly authorized representatives displayed an intent to ratify. Accordingly, because the subordinate facts do not support the ultimate legal conclusions reached by the referee, the trial court improperly accepted the report and rendered judgment thereon.

The judgment is reversed only as against the defendant city of New London and the case is remanded with direction to render judgment in favor of that defendant.

In this opinion the other judges concurred.