[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
The plaintiff, Tina Lynch, filed a revised complaint dated August 14, 1995, which contained four counts directed against the defendants, Barbara Donahue and Grand Prix Farms, Ltd., d/b/a Grand Prix Productions.[1] In the first count, the plaintiff alleges that she was hired on January 7, 1991 as a live-in nanny at the defendant's residence; that she was given her own room in the defendant's private residence and stored various items of personal records and documents within her room; and that she never authorized the defendant to remove, inspect or publish any of her personal records. The plaintiff further alleges in this first count that she gave the defendant two weeks notice that she was leaving her employment, but that on September 25, 1992, while she was still employed, the defendant locked her out of the house, and she had to receive assistance from the local police department to retrieve her belongings. As she left that evening, according to the plaintiff, the defendant told her that "I am going to make your life a living hell." The plaintiff further contends that in late December, 1992, the defendant mailed copies of the plaintiff's personal medical records, which had been stored in her room at the defendant's home, to the plaintiff's grandmother, which action caused the plaintiff "enormous embarrassment, anxiety and distress." The plaintiff further contends that in late January, 1993, the defendant transmitted copies of the plaintiff's personal medical records by fax to her stepfather. The plaintiff contends that this conduct "intentionally intruded" on her "physical and mental solitude and/or seclusion."
In the second count, the plaintiff claims that the defendant intentionally published private personal information. In the third count, the plaintiff contends that the conduct of the defendant amounts to an CT Page 7890 "intentional infliction of emotional distress." In the fourth count, the plaintiff alleges that this conduct on the part of the defendant constituted a "negligent infliction of emotional distress."
The defendant denied the material allegations of the complaint and filed three special defenses and a counterclaim. In the first special defense, the defendant, Barbara Donahue, alleges that she sent the plaintiff's personal medical records to her grandmother at the plaintiff's request. In the second special defense, the defendant claims that she sent the material in question to the plaintiff's stepfather also at the plaintiff's request and that it was marked "personal" only for the plaintiff's stepfather. In the third special defense, the defendant contends that the information contained in the medical records transmitted to the plaintiff's grandmother and stepfather was already known by the recipients.
In the counterclaim, the defendant alleges that the plaintiff was responsible, according to the written employment agreement she signed, for her long distance telephone charges, damage to the defendant's motor vehicle, and any damage to the defendant's residence. The defendant further contends that the plaintiff caused damage to her car and home, incurred long distance telephone charges, and used the defendant's credit card without authorization.
The case was referred for trial to Attorney Robert A. Slavitt, an attorney trial referee, in accordance with General Statutes § 52-434
(a) and Practice Book § 19-2A. The referee conducted a trial and submitted a report finding the following facts: (1) as a live-in nanny at the defendant's residence, the plaintiff was given her own room which contained a closet where the plaintiff stored private papers, including medical records; (2) the medical records indicated that the plaintiff had an abortion several years earlier; (3) the plaintiff never authorized the defendant to examine these medical records or to transmit the information therein to any person; (4) the plaintiff needed the assistance of the Greenwich Police Department to retrieve her property after she was locked out of the house by the defendant on September 25, 1992, after she gave the defendant notice that she was leaving her employment, and the plaintiff removed all her personal and medical records from the defendant's house at that time; (5) in December, 1992, the defendant mailed to the plaintiff's grandmother a copy of the plaintiff's medical records, including a reference to an earlier abortion procured through Planned Parenthood of Vermont; (6) the disclosure of this information, of which the grandmother had no previous knowledge, caused embarrassment and humiliation to the plaintiff, who was nineteen years old at the time, and resulted in a "material deterioration" of the relationship between the plaintiff and her grandmother; (7) in January, 1993, the defendant sent CT Page 7891 this same information to the place of business of the plaintiff's stepfather via fax where, although the stepfather already knew about the abortion, the contents of any fax are available to anyone in the office who retrieves the information from the machine; (7) employees of the stepfather's business did view these records and became aware of the plaintiff's medical history, which caused the plaintiff to sustain additional distress; (8) the defendant did not appear personally and testify in court; and (9) the plaintiff was a credible witness.
The attorney trial referee concluded, on the basis of the above findings of fact, that (1) the plaintiff had proved that the defendant invaded her privacy as alleged in the first count of the complaint by an unauthorized obtaining of the plaintiff's medical records and the transmittal thereof without authority to do so; (2) the defendant intended to inflict emotional distress on the plaintiff, and the plaintiff did in fact sustained such distress, embarrassment and anxiety; (3) the plaintiff should be awarded $7,500 as compensation for the invasion of her "right to seclusion and privacy;" (4) the plaintiff should not prevail on her second count because there was inadequate proof that the defendant "published" the medical records in question; (5) the plaintiff should not prevail on the third and fourth counts of her complaint because she did not prove that the emotional distress she sustained was "severe;" (6) the plaintiff was entitled to punitive damages measured by the costs of litigation because the defendant's conduct was motivated by "malice," manifested an intent to do harm to the plaintiff, and evidenced a "reckless indifference" to the plaintiff's rights; and (7) the defendant did not offer any evidence regarding her special defenses and counterclaim, and that judgment should enter in favor of the plaintiff with respect to the counterclaim.
The plaintiff did not file any objections to the report of the attorney trial referee, but the defendant filed objections pursuant to Practice Book § 19-14, as amended effective January 1, 2000.[2] The objections by the defendant contend that all the factual conclusions by the referee, except those involving the corporate defendant and the finding that the emotional distress suffered by the plaintiff was not "severe," are erroneous. The defendant also objected to the recommended award for pain and suffering and for punitive damages. In a supplemental brief, the defendant claims that the plaintiff did not testify that the defendant had disclosed the medical records for the purpose of causing emotional distress to the plaintiff. The defendant also contended that punitive damages should not have been awarded because there was no evidence that the defendant intended to cause the plaintiff to sustain emotional distress.
This court's scope of review of an attorney trial referee's report was CT Page 7892 reiterated by the Supreme Court in Elgar v. Elgar, 238 Conn. 839, 848-49,679 A.2d 937 (1996). There, the court held that "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 [currently § 19-17]. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.). See also TDS Painting and Restoration, Inc. v. Copper BeechFarm, Inc., 45 Conn. App. 743, 751, 699 A.2d 173, cert. denied,243 Conn. 908, 701 A.2d 338 (1997) (the court "cannot find additional facts or reject others unless a material fact has been found without evidence.").
Pursuant to Elgar v. Elgar, supra, 238 Conn. 845, this court has two tasks to perform in reviewing an attorney trial referee's report. The first task is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id. In this particular case, however, the defendant does not attack the referee's findings of fact, but only his conclusions derived from those facts. In addition, the plaintiff, in her brief, has pointed to portions of the transcript which furnish support to the findings of fact by the referee. These facts were based on the testimony of the plaintiff who, according to the referee, was a "credible" witness. "Great deference is given to the trial court's findings because the trial court is responsible for weighing the evidence and determining the credibility of witnesses." Beizer v. Goepfert, 28 Conn. App. 693, 704-05, 613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992), cert. denied,507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993).
"The finder of fact is in a better position to determine the credibility of the witnesses and the weight to be accorded their testimony." Beizer v. Goepfert, supra, 28 Conn. App. 706. Therefore, this court is bound to accept the factual findings by the referee. Tarka v.Filipovic, 45 Conn. App. 46, 54, 694 A.2d 824, cert. denied, 242 Conn. 903,697 A.2d 363 (1997).
Since the factual findings by the referee cannot be overturned in this case, the remaining task is to "evaluate . . . the attorney referee CT Page 7893 report as it applies the law to the facts." Tarka v. Filipovic, supra,45 Conn. App. 53. The issue is whether the "subordinate facts" found by the referee "support the ultimate legal conclusions reached by the referee." New Milford Block Supply Corp. v. N. Grondahl Sons, Inc.,51 Conn. App. 454, 460, 722 A.2d 1218 cert. denied 248 Conn. 901,732 A.2d 177 (1999).
The first "ultimate legal conclusion" reached by the referee was that the defendant's conduct constituted an invasion of privacy. This has been recognized as a tort in this state since the Supreme Court decidedGoodrich v. Waterbury Republican-American, Inc., 188 Conn. 107, 127-28,438 A.2d 1317 (1982). The court adopted the four categories of invasion of privacy delineated in 3 Restatement (Second), Torts § 652A, including "an unreasonable intrusion upon the seclusion of another." "One who intentionally intrudes, physically or otherwise, upon the solitude or seclusion of another or his private affairs or concerns, is subject to liability to the other for invasion of his privacy, if the intrusion would be highly offensive to a reasonable person." 3 Restatement (Second), Torts § 652B, p. 378 (1977). An invasion of privacy takes place when a defendant has "intruded into a private place, or otherwise invaded a private seclusion that the Plaintiff has thrown about his person or affairs." 3 Restatement (Second), Torts § 652B, comment (C) (1977). See also Venturi v. Savitt Inc., 191 Conn. 588, 591 n. 1,468 A.2d 933 (1983).
The factual findings by the referee that the plaintiff had removed all her papers, including medical records, from the defendant's home in February, 1992, yet several months later the defendant sent copies of these medical records to two of the plaintiff's relatives lead legally and logically to the conclusion that the plaintiff's privacy was invaded. The defendant argues that the plaintiff did not specifically testify that in her opinion the defendant intended to cause her emotional distress. Intent was found by the referee based on all the facts of the case. It is clearly within the province of a fact finder to determine that one acted with a specific intent to accomplish some goal. Issler v. Issler,250 Conn. 226, 235, 737 A.2d 383 (1999).
The second "ultimate legal conclusion" is that the plaintiff is entitled to an award of punitive or exemplary damages. Such damages may be awarded when there is evidence of "a reckless indifference to the rights of others." Lawson v. Whitey's Frame Shop, 42 Conn. App. 599, 609,682 A.2d 1016 (1996), aff'd in part, rev'd in part, 241 Conn. 678,697 A.2d 1137 (1997). Punitive damages are measured by the "expenses of bringing the legal action, including attorney's fees, less taxable costs."Larsen Chelsey Realty Co. v. Larsen, 232 Conn. 480, 517 n. 38,656 A.2d 1009 (1995). The referee determined that the defendant acted CT Page 7894 with reckless indifference to the rights of the plaintiff, and hence his recommendation that punitive damages be awarded is accepted.
As to the amount of such damages, the referee noted that plaintiff's counsel annexed to his brief a bill in the amount of $5,432.89, plus disbursements of $355.39, but the plaintiff did not offer any proof at the trial as to the reasonableness of this charge as required by Venturiv. Savitt, Inc., supra, 191 Conn. 592-93. Therefore, the matter is remanded to the referee for the sole purpose of reporting on the amount of punitive damages that should be awarded to the plaintiff of course, the parties may be able to stipulate to an amount without the defendant waiving her claim that no punitive damages at all should be awarded. In the absence of such an agreement, the referee, with the assistance of the Case Flow office, should schedule a hearing on this subject as soon as possible.
In conclusion, based on the standard of review outlined in Elgar v.Elgar, supra, 238 Conn. 848-49, the referee's report and recommendations are accepted as to invasion of privacy as alleged in the first count of the complaint, including compensatory damages in the amount of $7,500, and also as to the recommendation regarding the award of punitive damages. Judgment enters in favor of the plaintiff with respect to the defendant's counterclaim. No material error in the report has been found, and there is no other sufficient reason for rendering the report unacceptable. Practice Book § 19-17(a).
Dated at Stamford, Connecticut, this 27th day of June, 2000.
William B. Lewis, Judge