[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
CT Page 15395
This case involves a claim by the plaintiff, Collard Roe, P.C., a New York law firm, that conveyances of two separate pieces of real property located in Westport by the defendant, Arthur O. Klein, to his wife, Diane L. Klein, also a defendant, were fraudulent within the meaning of General Statutes § 52-552a through 52-552l, the Uniform Fraudulent Transfer Act.[1]
In the first count of the amended complaint dated February 3, 1999, the plaintiff alleges that Mr. Klein transferred his interest in 7 Half Mile Common, Westport, to his wife in an attempt to defraud the plaintiff law firm which had obtained a judgment against Mr. Klein in the state of New York on February 28, 1997, prior to said transfer. In the second count of the complaint, the plaintiff alleges that Mr. Klein also transferred his interest in premises located at 391 North Main Street, Westport, to Mrs. Klein for the same purpose.
The defendants, who appeared pro se in this litigation,[2] filed a special defense dated March 27, 1999, that the judgment obtained by the plaintiff in New York was a "default" judgment that was "void, illegal and unenforceable ab initio" for lack of "subject matter jurisdiction" and in addition, that the New York judgment had been "declared invalid" by a decision of the Connecticut Statewide Grievance Committee on March 19, 1999.
The defendants also filed a six count counterclaim. In the first count, which is captioned as pertaining to Mr. Klein, it is alleged that the plaintiff filed a judgment lien certificate as well as a lis pendens against the 391 North Main Street property on March 13, 1998, a month after the conveyance to Mrs. Klein.[3] Mr. Klein further alleges that the filing of the above documents was made with a malicious intent to injure his "creditworthiness, reputation and domestic tranquillity."
In the second count of the counterclaim, which pertains to Mrs. Klein, it is alleged that the filing of the judgment lien and lis pendens by the plaintiff on March 13, 1998, was done with a malicious intent to injure CT Page 15396 Mrs. Klein's "creditworthiness, reputation and domestic tranquillity" and to inflict emotional distress on her. In the third count, Mr. Klein alleges that the filing of post-judgment interrogatories directed to him was done with a malicious intent to inflict emotional distress. Mr. Klein alleges in the fourth count of the counterclaim that the plaintiff converted money that belonged to Mr. Klein and attempted to collect the New York judgment in this state despite the fact that the Connecticut Statewide Grievance Committee "declared the entire New York default judgment invalid." In the fifth count, Mr. Klein alleges that the plaintiff failed to refund approximately $5,150 that the plaintiff had already collected on the New York judgment. In the sixth and final count of the counterclaim, Mrs. Klein alleges that the plaintiff persuaded and coerced First American Title Company "to seize and hold in escrow $150,000 belonging entirely" to Mrs. Klein.[4] In their prayer for relief, the defendants seek, among other Things, a judgment that the New York "default judgment" is void and unenforceable, and an order that the plaintiff law firm refund any money previously collected with respect to the New York judgment.
The case was referred for trial to Attorney Donna N. Heller, an attorney trial referee, in accordance with General Statutes § 52-434(a) and Practice Book § 19-2A. The referee conducted a trial and submitted a report finding the following facts: (1) the plaintiff obtained a judgment against Mr. Klein and his law firm, Klein Vibber, in the New York Supreme Court, Nassau County, on February 28, 1997, for $97,921,[5] and that Mr. Klein's appeal to the Appellate Division relating to that judgment was dismissed; (2) the New York judgment is unpaid except for approximately $5,150, and the plaintiff "domesticated" that judgment in this court;[6] (3) on July 25, 1997, about five months after the New York judgment was rendered, Mr. Klein transferred his interest in the 7 Half Mile Common property to his wife, at which time this property had a fair market value of $362,000; (4) Mr. Klein did not receive any consideration from Mrs. Klein with respect to his quit-claim deed of said premises to her; (5) about one year after the entry of the New York judgment, Mr. Klein, on February 12, 1998, quit-claimed his interest in premises at 391 North Main Street, which had a fair market value of $230,000, without receiving any consideration from Mrs. Klein;[7] (6) Mr. Klein did not have sufficient funds to satisfy the New York judgment after he transferred his interest in the two properties to his wife; (7) on March 19, 1999, the Statewide Grievance Committee dismissed a complaint by Attorney Allison C. Collard, a principal of the plaintiff law firm, against Arthur Klein for allegedly misappropriating funds belonging to Mr. Collard and his firm;[8]
(8) all of the plaintiff's activities in this state were aimed at collecting its New York judgment and these efforts were not intended to cause emotional injury to the Kleins, and, furthermore, neither of the CT Page 15397 Kleins suffered "severe emotional distress."
The attorney trial referee concluded, on the basis of the above findings of fact, that: (1) the New York judgment is valid, was properly domesticated in this state and is not subject to collateral attack;[9]
(2) the conveyances by Mr. Klein of his interest in 7 Half Mile Common and 391 North Main were done with the "intent to delay, hinder and/or defraud" the plaintiff in collecting the New York judgment, and Mrs. Klein knowingly participated in her husband's activities in this regard; (3) although Mr. Klein had sufficient equity in the two properties before he transferred them to pay the New York judgment, after such transfers he was "rendered insolvent and unable to satisfy the New York Judgment;" (4) the decision of the Statewide Grievance Committee did not "invalidate the New York Judgment in any way;" (5) the plaintiff had proved its case of fraud by "clear and convincing evidence;" based on the indicia of fraud contained in General Statutes § 52-552e(b), viz., (i) Mrs. Klein, the transferee, was an "insider;" (ii) Mr. Klein retained control of 7 Half Mile Common after the transfer, including residing therein and conducting a law practice at said premises; (iii) Mr. Klein was rendered insolvent after the transfer of the 7 Half Mile Common house to his wife; (iv) the transferor did not receive any consideration from Mrs. Klein for the transfer; (v) Mrs. Klein knew of the New York judgment when she accepted the conveyances; and (vi) the plaintiff demonstrated by the requisite proof that the transfer was intended to "delay, hinder and/or defraud" the plaintiff in the collection of the New York judgment; (6) the defendants failed to prove their counterclaim that the plaintiff's collection efforts were intentionally intended to inflict emotion distress on them because: (i) the plaintiff proceeded in a lawful manner to attempt to enforce and collect the New York judgment; (ii) there was no evidence that the plaintiff knew or should have known that its collection efforts were likely to cause emotional distress; and (iii) neither Mrs. Klein or her husband suffered any "severe emotional distress" as alleged in the counterclaim; and (7) the referee recommended that the transfer of 7 Half Mile Common be set aside and voided.
As authorized by Practice Book § 19-14, the defendants filed objections[10] to the attorney trial referee's report. The objections by the defendants are: (1) that the referee had violated Practice Book § 19-14 by not rendering her report until July 20, 2000, more than 120 days after the trial on January 12, 2000; (2) that the decision of the Statewide Grievance Committee, which exonerated him from misappropriating client funds, voided both the New York judgment and the judgment lien recorded on 391 Main Street; and (3) that the referee erred in not requiring the plaintiff to afford Mr. Klein access to a checking account in the name of his law firm, Klein and Vibber, which was maintained at the European American Bank in Roslyn, New York.[11]
CT Page 15398
This court's scope of review of an attorney trial referee's report was reiterated by the Supreme Court in Elgar v. Elgar, 238 Conn. 839,848-49, 679 A.2d 937 (1996). The court held in that case that: "[a] reviewing authority may not substitute its findings for those of the trier of the facts. This principle applies no matter whether the reviewing authority is the Supreme Court . . . the Appellate Court . . . or the Superior Court reviewing the findings of . . . attorney trial referees. See Practice Book § 443 [currently § 19-17]. . . . The factual findings of a [trial referee] on any issue are reversible only if they are clearly erroneous. . . . [A reviewing court] cannot retry the facts or pass upon the credibility of the witnesses. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence is left with the definite and firm conviction that a mistake has been committed." (Citations omitted; internal quotation marks omitted.).
Pursuant to Elgar v. Elgar, supra, 238 Conn. 845-46, this court has two tasks to perform in reviewing an attorney trial referee's report. The first is to determine whether the "referee's findings of fact were supported by the evidence." Id. The second task is to ascertain whether "the conclusions drawn therefrom were legally and logically correct." Id. The referee's factual conclusions in this case are essentially undisputed.[12]
This case is based on General Statutes § 52-552e(a), the Uniform Fraudulent Transfer Act, which requires "actual intent" to defraud. "[T]he determination of the question of fraudulent intent is clearly an issue of fact which must often be inferred from surrounding circumstances. Such a fact is, then, not ordinarily proven by direct evidence, but rather, by inference from other facts proven — the indicia or badges of fraud." (Internal quotation marks omitted.) Dietterv. Dietter, 54 Conn. App. 481, 487, 737 A.2d 926, cert. denied,252 Conn. 906, 743 A.2d 617 (1999). The referee determined as a fact that the defendants intended to defraud the plaintiff by the conveyance of the subject premises. "The question of whether a fraudulent conveyance took place is solely a question of fact to be determined by the trier."Davenport v. Quinn, 53 Conn. App. 282, 303, 730 A.2d 1184 (1999).
The determination of intent also involves a determination of the credibility of the witnesses. "Great deference is given to the trial court's findings [regarding the facts of a case] because the trial court is responsible for weighing the evidence and determining the credibility of witnesses." Beizer v. Goepfert, 28 Conn. App. 693, 704-05,613 A.2d 1336, cert. denied, 224 Conn. 901, 615 A.2d 1044 (1992), cert. CT Page 15399 denied, 507 U.S. 973, 113 S.Ct. 1416, 122 L.Ed.2d 786 (1993). It is clear that the referee chose to believe the testimony offered by the plaintiff and not that of the defendants regarding their intent when conveying the two properties to Mrs. Klein. "In making this explicit factual determination, the attorney trial referee implicitly found certain witnesses to be credible and believable in their testimony. This was precisely her function as a fact finder." Nor'easter Group, Inc. v.Colossale Concrete, Inc., 207 Conn. 468, 473, 542 A.2d 692 (1988). "The finder of fact is in a better position to determine the credibility of witnesses and the weight to be accorded their testimony." Beizer v.Goepfert, supra, 28 Conn. App. 706. Therefore, this court is bound to accept the factual findings by the referee. Tarka v. Filipovic,45 Conn. App. 46, 54, 694 A.2d 824, cert. denied, 242 Conn. 903,697 A.2d 363 (1997).
Moreover, the attorney trial referee imposed the correct standard of proof. "For a plaintiff to succeed, [a] fraudulent conveyance must be proved, if at all, by clear, precise and unequivocal evidence." (Internal quotation marks omitted.) Davenport v. Quinn, supra, 53 Conn. App. 303.
In terms of the objections to the attorney trial referee's report, the defendants' argument that the referee violated the 120 day rule is not persuasive. Practice Book § 19-4 refers to the necessity of filing a report within 120 days "of the completion of the trial." A trial, however, is not "complete" until briefs have been filed. NortheastSavings, F.A. v. Scherban, 47 Conn. App. 225, 231, 702 A.2d 659, cert denied, 244 Conn. 907, 714 A.2d 2 (1998). The plaintiff filed a brief on March 24, 2000 and the report of the referee was filed within 120 days of that date, on July 20, 2000.
Secondly, the defendants have failed to cite any authority that a decision of the Statewide Grievance Committee exonerating an attorney somehow can void a decision of the New York Supreme Court which, as mentioned previously, was affirmed by the Appellate Division in that state, and then made a judgment of this court pursuant to General Statutes § 52-605, the Uniform Enforcement of Foreign Judgments Act. Mr. Klein has contended that the judgment in New York was a "default judgment," not entitled to be made a judgment in this state. The history of the case in the New York courts was set forth in footnote six, supra, and it is clear that the judgment was not rendered because of a default in appearance, but rather because Mr. Klein did file an appearance but he failed to appear for trial on the scheduled date.
As to the claim that the defendants were not afforded access to a checkbook in the possession of the plaintiff, this is obviously an attempt to gather evidence of Mr. Collard's perfidy and the propriety of CT Page 15400 Mr. Klein's actions. These efforts are all aimed at overturning or opening the New York judgment, which ultimately resulted in a judgment lien being placed on the 7 Half Mile Common property, which in turn resulted in $150,000 of the sales proceeds being held in escrow. Not only was Mr. Klein unsuccessful in overturning the New York judgment in the courts of New York, the file indicates that Mr. Klein attempted to bring his claims to the federal court system, where he was rebuffed by two district courts, the United States Court of Appeals, Second Circuit, and even the United States Supreme Court, which apparently denied certiorari. Thus, the referee was clearly acting within the scope of her authority in rejecting Mr. Klein's attempt to gain access to the checkbook in question. Her task was to determine whether there had been fraudulent conveyances, not to decide the merits of the respective claims of Mr. Klein and Mr. Collard regarding misappropriation of client funds.
Since the factual findings by the referee cannot be overturned in this case, the remaining task is to "evaluate . . . the attorney referee report as it applies the law to the facts." Tarka v. Filipovic, supra,45 Conn. App. 53. The issue is whether the "subordinate facts" found by the referee "support the ultimate legal conclusions reached by the referee." New Milford v. S. Grondahl Sons, 51 Conn. App. 454, 460,722 A.2d 1218 (1999). This court believes that those facts do indeed support the ultimate legal conclusion of a fraudulent conveyance. Moreover, the attorney trial referee employed the correct standard of proof and relied on factors enumerated in the Uniform Fraudulent Transfer Act, General Statutes § 52-552e(b). Shawmut Bank v. BrooksDevelopment Corp., 46 Conn. App. 399, 407, 699 A.2d 283 (1997).
In terms of the practical results of the referee's recommendations, the decision does not affect the property at 391 North Main Street at all because, as pointed out in footnote six, supra, that property was sold to the Straights on November 16, 1998, in a bona fide sale for consideration. However, the recommendation that the conveyance of 7 Half Mile Common be revoked places the property back in Mr. Klein's name as of February 12, 1998, the date of the purported conveyance to Mrs. Klein. This recommendation also resolves any questions about either the propriety of the filing of the plaintiff's judgment lien on March 13, 1998, after Mr. Klein purportedly transferred this property to Mrs. Klein, or the affect of the Validating Act of 1999[13] on the lack of two witnesses on the quit-claim deed to Mrs. Klein.
Judgment may enter for the plaintiff on the complaint and also with respect to the defendants' counterclaim, as recommended by the attorney trial referee, including the voiding and setting aside of the conveyance by Mr. Klein of the premises at 7 Half Mile Common, Westport, to his wife. No material error in the report has been found, and there is no CT Page 15401 other sufficient reason for rendering the report unacceptable. Practice Book § 19-17(a).
So Ordered.
Dated at Stamford Connecticut, this day 12th day of December, 2000
William B. Lewis, Judge T.R.