# ANTHONY CALANDRO ET AL. *v.* ALLSTATE INSURANCE COMPANY
## (AC 19273)

Foti, Dranginis and Stoughton, Js.

Argued March 22—officially released June 5, 2001

*Linda L. Morkan*, with whom were *Daniel F. Sullivan* and, on the brief, *Jeffrey C. Kestenband*, for the appellant (named defendant).

*John B. Farley*, with whom, on the brief, was *Richard C. Tynan*, for the appellee (third party defendant).

*Opinion*

FOTI, J. The defendant, Allstate Insurance Company (Allstate), appeals from the judgment rendered after a trial to the court in favor of the third party defendant, Biller Associates, Inc. (Biller Associates). Allstate claims that the trial court improperly failed to conclude that (1) Biller Associates' conduct toward Allstate violated the Connecticut Unfair Trade Practices Act (CUTPA), General Statutes § 42-110a et seq., and (2) Biller Associates' submission of a certain claim for damages to Allstate violated CUTPA. We affirm the judgment of the trial court.

The detailed facts and procedural history that follow are necessary for our resolution of Allstate's claims. The plaintiffs, Anthony Calandro and Cynthia Calandro,

owned property known as 232 Short Beach Road in the town of East Haven. Prior to November 18, 1991, the plaintiffs entered into a contract with Allstate to insure that property against, inter alia, fire damage. On November 18, 1991, the property sustained fire damage. The plaintiffs hired Biller Associates,[1] a public adjuster, to settle their claim with Allstate for damages caused by the fire in accordance with the terms of their insurance policy.

From the outset, disagreements between Biller Associates and Allstate hampered the speedy resolution of the plaintiffs' claim. As the court aptly characterized it, "[t]he atmosphere of these negotiations quickly became acrimonious." By February, 1992, Allstate and Biller Associates came to different damage estimates based on their conflicting opinions concerning the nature and extent of the damage caused by the fire, and the nature

---

[1] In their amended complaint, the plaintiffs also named Meyer Biller, a founder and principal of Biller Associates, as a defendant in this action. The court found that Meyer Biller acted at all times relevant to this action on behalf of Biller Associates and that any of his acts or omissions were attributable to Biller Associates. Allstate does not challenge that finding.

Biller Associates is licensed by the state to perform public adjusting services. A public adjuster is "any person, partnership, association, limited liability company or corporation who or which practices as a business the adjusting of loss or damage by fire or other hazard under any policies of insurance in behalf of the insured under such policies, or who advertises or solicits business as a public adjuster, or holds himself out to the public as engaging in such adjusting as a business." General Statutes § 38a-723.

General Statutes § 38a-724 mandates the use of an employment contract between a public adjuster and a client. Biller Associates' contract with the plaintiffs provided that Biller Associates could earn as much as 10 percent of the value of the loss that the plaintiffs recovered from Allstate.

The plaintiffs also stated a claim against attorney Jon Biller, doing business as the Biller Law Firm, who represented them in negotiations with Allstate. Attorney Biller, Meyer Biller's son, was also counsel for Biller Associates. He shared office space and equipment with Biller Associates. Once Biller Associates became a party to the action, attorney Biller ceased to represent the plaintiffs. The court did not address the plaintiffs' claim against attorney Biller, having stayed the action against him.

of necessary repairs to the damaged structure.[2] For example, Biller Associates' estimate included $8135.24 for repairs to the den or family room of the house, a contention which we will discuss more fully in part II of this opinion. Both sides also disagreed over the proper method to repair damaged floor joists.

The plaintiffs' policy with Allstate provided that during the settlement of a claim, if the insured and Allstate are unable to agree on the amount of damages, either party may make a written demand for an appraisal. That process requires each party to name a "competent and disinterested" appraiser. The appraisers thereafter are to select an umpire and, in the event that the appraisers fail to agree on the amount of the loss, they are to submit their disagreements to the umpire. The amount of the loss is determined when at least two of those parties reach an agreement on the value of the loss. Biller Associates rejected Allstate's initial offer and demanded that the claim be submitted to appraisal, naming Larry Biller, Biller Associates' president, as its choice of appraiser on February 17, 1992.

On February 27, 1992, Allstate rejected Larry Biller as appraiser on the ground that he was not disinterested. Allstate named Richard McKenna as its appraiser. Biller Associates rejected Allstate's choice of McKenna on the ground that he was not disinterested. Finally, on September 4, 1992, Jon Biller, attorney for the plaintiffs, named David Kronberg as the plaintiffs' appraiser and accepted under protest Allstate's appraiser, McKenna.

Even while the parties disagreed about each other's choice of appraiser, they continued their efforts to settle the claim. By the end of April, 1992, Allstate and Biller Associates seemed to be nearing a resolution as both

---

[2] Biller Associates' initial estimate was $68,742.84. Allstate's estimate was $29,556.15 as a full replacement cost and $25,318.63 as an actual cash value cost.

sides were significantly closer in their loss and repair estimates. On May 4, 1992, however, the appraiser handling the matter at Biller Associates, Larry Biller, was murdered. Another adjuster, Al Tancreti, took over the file and continued to negotiate with Allstate.

Any consensus was lost in the following months. In a letter dated June 10, 1992, Allstate's appraiser communicated to Biller Associates his understanding of the parties' agreement on the scope of the fire damage, as well as a proposal that First General Services, Inc. (First General), a contractor, should perform the repair services on the plaintiffs' property, per Allstate's home repair guarantee set out in the plaintiffs' policy. Subsequent correspondence between the parties reflected disagreements over each side's choice of appraiser, the proper scope of the repairs and the estimates for repair. Complicating the matter, a July 31, 1992 rainstorm caused water damage to the property. This damage led the plaintiffs to submit another claim under their Allstate policy. Finally, in August, 1992, Allstate filed a motion to compel appraisal.

On February 24, 1993, an award on the fire loss was entered, and, on March 10, 1993, an award was entered on the water loss. Allstate has not paid the plaintiffs for the water loss, claiming that the plaintiffs failed to protect their property adequately following the fire, as their policy required.

In August, 1992, the plaintiffs filed a three count complaint against Allstate, alleging breach of contract, breach of the duty of good faith and fair dealing and unfair trade practices. The court granted Allstate's motion to implead Biller Associates on February 14, 1994. Allstate subsequently filed a third party complaint against Biller Associates, alleging, inter alia, violations of CUTPA. The plaintiffs thereafter amended their complaint, adding claims against Biller Associates and

Meyer Biller for breach of contract, negligence and violations of CUTPA, and a claim against Jon Biller for malpractice. The plaintiffs abandoned their claims against Allstate for breach of the duty of fair dealing and for violations of CUTPA. Biller Associates later filed a counterclaim against the plaintiffs for failure to pay a fee for services.

The court found for the plaintiffs on their breach of contract claim against Allstate and awarded the plaintiffs $22,328.42. The court also found for the plaintiffs on their breach of contract and negligence claims against Biller Associates and awarded damages of $1. The court found for the plaintiffs on their CUTPA claim against Biller Associates and awarded damages of $15,501.

The court found for the plaintiffs and against Biller Associates on Biller Associates' counterclaim for the payment of fees. The court found for Biller Associates on Allstate's CUTPA claim, the only surviving claim in Allstate's third party complaint and the subject of this appeal.

General Statutes § 42-110g (a) provides in relevant part that "[a]ny person who suffers any ascertainable loss of money or property, real or personal, as a result of the use or employment of a method, act or practice prohibited by section 42-110b, may bring an action . . . to recover actual damages. . . ."

General Statutes § 42-110b (a) provides that "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce." "[I]n determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice, without necessarily having been previously considered unlawful, offends public policy as it has been established by statutes, the common law,

or otherwise—whether, in other words, it is within at least the penumbra of some common law, statutory, or other established concept of unfairness; (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers [competitors or other businessmen] . . . . All three criteria do not need to be satisfied to support a finding of unfairness." (Internal quotation marks omitted.) *Thames River Recycling, Inc.* v. *Gallo*, 50 Conn. App. 767, 785–86, 720 A.2d 242 (1998).

"A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Moreover, [our Supreme Court] has set forth a three part test for satisfying the substantial injury criterion: [1] [the injury] must be substantial; [2] it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and [3] it must be an injury that consumers themselves could not reasonably have avoided." (Citation omitted; internal quotation marks omitted.) *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, 250 Conn. 334, 368, 736 A.2d 824 (1999).

I

Allstate first claims that the court was legally and logically required to render judgment in favor of Allstate on its CUTPA claim once it found that Biller Associates committed unfair and deceptive acts that caused an ascertainable loss for the plaintiffs in the form of an unreasonable delay in the resolution of the plaintiffs' claim. We disagree.

Allstate challenges the different outcomes in the CUTPA claims against Biller Associates as an "internal inconsistency" in the court's decision. Allstate argues that the court was bound by the applicable law and undisputed evidence to render judgment in its favor. Allstate maintains that it does not challenge the court's

underlying factual determinations concerning Biller Associates' conduct. To the contrary, it argues that those determinations are correct and well supported by the evidence. To the extent that Allstate is challenging the trial court's interpretation of CUTPA, our review is plenary. Id., 367. To the extent, however, that our analysis of this claim requires us to review the court's factual findings, we will do so using a clearly erroneous standard. Id.

The following additional facts are relevant to this claim. The court found that Biller Associates breached the duty of good faith and fair dealing that it owed to the plaintiffs and committed professional negligence against the plaintiffs, thereby violating CUTPA, in the following three ways. First, Biller Associates improperly named one of its employees, on two separate occasions, to act as an appraiser after the employee previously had been active on the claim. Biller Associates also failed to withdraw promptly the nomination of those individuals when it should have done so. That conduct violated the terms of the plaintiffs' policy with Allstate, which required that it appoint a disinterested appraiser. Second, Biller Associates misrepresented to Allstate that the plaintiffs insisted on a settlement of the claim for $40,000. Third, Biller Associates failed to convey to the plaintiffs Allstate's offers to settle the claim. The court found credible Anthony Calandro's testimony that Biller Associates did not notify him, as the plaintiffs' contract with Biller Associates mandated, of Allstate's June 10, 1992 offer to have First General repair the fire loss damage and that he would have welcomed that offer had Biller Associates conveyed it to him.

In its third party complaint against Biller Associates, Allstate alleged that "[i]f the plaintiffs were injured in the manner alleged in their claim against Allstate, then said injuries were proximately caused by the conduct

of Biller Associates . . . ." The plaintiffs' sole claim against Allstate was that it failed to comply with applicable policy provisions by failing to compensate the plaintiffs for the subsequent water damage to their property. Allstate further claimed that Biller Associates' conduct caused the water damage to the plaintiffs' property. Allstate alleged that Biller Associates improperly submitted a claim for damages and repairs to the plaintiffs' property for losses that were not caused by the fire, failed to communicate to the plaintiffs Allstate's offers of settlement and the terms of offers to compromise, failed to communicate accurately to the plaintiffs the terms and conditions of the plaintiffs' policy and failed to take steps to protect the plaintiffs' property from further damage following the fire despite its representation that it would do so. Allstate alleged that these unfair acts or practices violated CUTPA, caused the plaintiffs' injuries and, as a result, caused Allstate an ascertainable loss.

The court found that Allstate failed to prove its allegations by a fair preponderance of the evidence and that "any injury suffered by Allstate was incidental to such unfair trade practices. Biller Associates' unfair trade practices breached its duty to the [plaintiffs] as its clients. No such duty was owed Allstate." The court further found that Biller Associates' conduct did not cause Allstate an ascertainable loss. Although Allstate argued that its actual damages consisted of " 'fees and costs for lawyers, appraisers and [an] umpire resulting from the unnecessary appraisal proceedings and litigation related thereto,' " the court found that Allstate failed to prove those damages because it failed to prove that the appraisal proceedings and litigation were, in fact, unnecessary.[3] The court's finding is further supported

---

[3] The court explained its finding as follows: "The expenditures claimed as damages are, in fact, routine costs of doing business. There was no showing that the plaintiffs' motion to vacate the fire award was vexatious litigation. Allstate chose to file its motion to compel appraisal. If such action had the effect of pushing Biller Associates to withdraw its objection to

by the fact that the amount ultimately awarded to the plaintiffs exceeded Allstate's offers of settlement. The court further explained that, even if Allstate had demonstrated the existence of an ascertainable loss, it was persuaded that Biller Associates' conduct would not satisfy the second prong of CUTPA's "substantial injury" test.[4]

Allstate claims, essentially, that the court's findings concerning the plaintiffs' CUTPA claim against Biller Associates legally and logically required that Allstate also succeed on its CUTPA claim against Biller Associates. Although Allstate argues that the different outcomes on the CUTPA claims against Biller Associates are inconsistent, the court made different factual determinations that underlie the outcomes concerning the plaintiffs and Allstate. We conclude that those findings are supported by the record, are not inconsistent and are not contrary to law.

In regard to the plaintiffs, the court found that Biller Associates violated CUTPA in three separate ways and that the plaintiffs had proven that they suffered a unique ascertainable loss as a result of that conduct. The court found that "such acts delayed resolution of the plaintiffs' claim, caused additional expenditure by Anthony Calandro of time and effort in protecting the subject premises, caused the plaintiffs additional worry and

---

[Allstate's choice of appraiser], well and good, but Allstate failed to establish that, but for Biller Associates' unfair trade practices, the losses at issue would have settled without appraisal."

[4] The court explained its reasoning as follows: "Unfair trade practices claims against public adjusters, such as Allstate asserts here, would, if sanctioned by the courts, encourage public adjusters to resolve claims in haste, even on terms unfavorable to their clients, and to avoid appraisal when such appraisal might be in their clients' best interests, lest the public adjuster find himself faced with a claim of unfair trade practices for refusal to settle a claim on the insurers' terms. The harm to consumers in general would seem to outweigh any benefit to any insurer in a given case and would be contrary to public policy."

aggravation, loss of the use of the damaged property, as well as loss of money in an undetermined amount."

The court found very differently with respect to Allstate's CUTPA allegations against Biller Associates. Of the three violations of CUTPA that the court attributed to Biller Associates, Allstate pleaded only one in its complaint against Biller Associates, namely, that Biller Associates failed to communicate promptly Allstate's settlement offers to the plaintiffs. Although Allstate attempted to prove at trial that Biller Associates engaged in several acts of misrepresentation and concealment and tortiously interfered with the contract between Biller Associates and the plaintiffs, the court found that Allstate did not prove those allegations by a fair preponderance of the evidence.

The court further found that Biller Associates' conduct did not cause Allstate any injury because Allstate failed to prove that its claimed fees and costs associated with the appraisal proceedings and litigation were, in fact, unnecessary or that, but for Biller Associates' conduct, the plaintiffs' losses would have settled without appraisal. Despite CUTPA's broad remedial nature, "[t]he plain language of § 42-110g (a) provides one limitation by requiring that the plaintiff suffer an ascertainable loss that was caused by the alleged unfair trade practice." (Internal quotation marks omitted.) *Reader* v. *Cassarino*, 51 Conn. App. 292, 298–99, 721 A.2d 911 (1998). While our courts have applied that requirement liberally, a claimant must still prove by a preponderance of the evidence that it suffered an ascertainable loss of money or property as a result of a defendant's actions. See *Service Road Corp.* v. *Quinn*, 241 Conn. 630, 639, 698 A.2d 258 (1997). We must affirm a court's factual determination concerning whether a party suffered an ascertainable loss unless such a determination is clearly erroneous. *Jacques All Trades Corp.* v. *Brown*, 42 Conn. App. 124, 130, 679 A.2d 27 (1996), aff'd, 240 Conn. 654,

692 A.2d 809 (1997). We cannot say that the court's findings in that regard are clearly erroneous and that the different outcomes occasioned by those findings are inconsistent as a matter of law.

Although the court need not have addressed the issue, it noted that even if Allstate had proved that it suffered an ascertainable loss, its claim still would fail because it could not satisfy the second prong of the substantial injury test. That prong permits the court to ascertain whether the claimed injury is "outweighed by any countervailing benefits to consumers or competition that the practice produces . . . ." (Internal quotation marks omitted.) *Hartford Electric Supply Co.* v. *Allen-Bradley Co.*, supra, 250 Conn. 368. Allstate argues that the court incorrectly held that an insurer could not state a CUTPA claim against a public adjuster and that the court imposed a higher standard of proof on Allstate because it is an insurance company.

Rather than imposing a higher standard on Allstate, as Allstate suggests, the court noted that Allstate's CUTPA claim against Biller Associates was "independent of the [plaintiffs'] CUTPA claim in that each complainant must establish substantial injury to prevail on its claim. Allstate failed to establish an ascertainable loss . . . and thus failed to establish that it was substantially injured by any actions of Biller Associates." The court did not prevent Allstate from pursuing a CUTPA claim against Biller Associates because it was an insurance company. Instead, the court explained that permitting Allstate to prevail on its claim, given the facts of this case, would implicate public policy because it could affect the duty that public adjusters owe to their clients. The court found that the conduct at issue in this case concerning Biller Associates' delay in reaching settlement was outweighed by the danger of pressuring public adjusters to settle claims on the insurer's terms, rather than in the best interest of the insured. On appeal, although

Allstate argues the public policy benefits of permitting insurance companies to "act as private attorneys general" in enforcing CUTPA against public adjusters, we need not address the merits of that argument, outside of noting that the court reasonably could have found as it did given the facts of this case.

We also need not address whether the court properly required either the plaintiffs or Allstate to prove a substantial injury. The court properly noted that Allstate's burden of satisfying the "substantial injury" prong of the cigarette rule existed independently of the fact that the plaintiffs proved substantial injury. It is within the trier's province to weigh the CUTPA factors as it sees fit. The law prescribes no precise formula by which the court should balance the criteria. The court, in this case, was free to consider whether the injury was substantial, after having found that Allstate's case with regard to the other two criteria was not very strong.

The court's findings regarding the plaintiffs' claim are not inconsistent with its findings concerning Allstate's claim. Although arising from the same conduct, the CUTPA claims brought by Allstate are distinguishable. A CUTPA analysis does not occur in a vacuum; it should be self-evident that the criteria in the analysis require the finder to examine the effect of the conduct in question, that is, the injury it occasioned. The court did not suggest that it interpreted CUTPA as prohibiting insurance companies from bringing claims against public adjusters and its conclusions were not contrary to law.

## II

Allstate next claims that the court improperly determined that Biller Associates did not violate CUTPA when it submitted to Allstate a claim for damages to the plaintiffs' property that it knew predated the compensable fire loss. We disagree.

"Whether a practice is unfair and thus violates CUTPA is an issue of fact." (Internal quotation marks omitted.) *Tarka* v. *Filipovic*, 45 Conn. App. 46, 55, 694 A.2d 824, cert. denied, 242 Conn. 903, 697 A.2d 363 (1997), citing *DeMotses* v. *Leonard Schwartz Nissan, Inc.*, 22 Conn. App. 464, 466, 578 A.2d 144 (1990). On appellate review, we overturn factual determinations only when they are clearly erroneous. *Vezina* v. *Nautilus Pools, Inc.*, 27 Conn. App. 810, 820, 610 A.2d 1312 (1992).

The following additional facts are necessary to our resolution of this claim. In its third party complaint against Biller Associates, Allstate alleged that Biller Associates "made [a] claim on behalf of the plaintiffs for damages to the plaintiffs' premises which were not caused by the fire which damaged the plaintiffs' premises on November 18, 1991," and that this conduct violated CUTPA and caused Allstate ascertainable loss.

The court found that Biller Associates' initial estimate for damages to the plaintiffs' property, in January, 1992, included $8135 for repairs to the den or family room, including the replacement of certain wall paneling. Anthony Calandro testified that that damage predated the fire damage and that he informed Meyer Biller of that fact early on. Allstate disagreed that this damage was within the scope of the fire damage. By April 28, 1992, Larry Biller generated a replacement cost estimate, which replaced Meyer Biller's estimate of $8135 for repairs to the family room, with an estimate of $295.05 for cleaning and painting repairs to the room. Biller Associates subsequently decreased its estimate for repairs to this part of the structure to $267.10.

The court further found that Biller Associates' conduct in this regard did not give rise to a CUTPA violation by Biller Associates against Allstate. The court explained that it "simply was not persuaded that Biller

Associates' actions with regard to the preexisting damage constituted illegal, immoral or unscrupulous acts in violation of CUTPA. The court took into consideration the succession of individuals negotiating on behalf of Biller Associates and the confusion occasioned by the demise of Larry Biller. The court finds that Allstate failed to establish, by a fair preponderance of the evidence, that Biller Associates sought to include preexisting damage in claims for fire loss, so as to violate [CUTPA]."

More importantly, the court found that disagreements between Allstate and Biller Associates concerning the scope of the damage caused by the fire were "legitimate and legitimately disputed at least until the end of April, 1992, when . . . the scope of the damage to the family room appeared to be a nonissue, having been dropped from Biller Associates' estimates." That finding, therefore, weighed against Allstate's claim that Biller Associates' conduct caused it injury.

Allstate urges us nonetheless to hold that the court could only have concluded that Biller Associates' conduct violated CUTPA. It argues that the court could not reasonably find that Biller Associates' inclusion of the disputed living room damage in its original estimate resulted from confusion at Biller Associates. Allstate argues that it submitted evidence that attorney Jon Biller, in the course of representing the plaintiffs, included the cost of extensive repairs to the family room in a letter to Allstate dated July 9, 1992.

Allstate correctly points out that our law does not require it to prove that Biller Associates acted with an intent to deceive or with an illicit motive. See *Kim* v. *Magnotta*, 249 Conn. 94, 108, 733 A.2d 809 (1999); *Willow Springs Condominium Assn., Inc.* v. *Seventh BRT Development Corp.*, 245 Conn. 1, 43, 717 A.2d 77 (1998);

*Prishwalko* v. *Bob Thomas Ford, Inc.,* 33 Conn. App. 575, 583, 636 A.2d 1383 (1994).

On the basis of the evidence before it and given the unusual events that transpired during the settlement of the claim, the court could well have found that this conduct did not violate CUTPA. Not every misrepresentation constitutes a CUTPA violation, and the evidence permitted the court to find that the inclusion of that claim in Biller Associates' estimate could have been an "instance of misrepresentation . . . due to the unique circumstances of this particular case as distinguished from unfair or deceptive acts or practices in the defendant's trade or business." *Jacobs* v. *Healey Ford-Subaru, Inc.,* 231 Conn. 707, 729, 652 A.2d 496 (1995). It was within the court's province to evaluate the evidence surrounding that issue, and we cannot say that its finding was clearly erroneous.

The judgment is affirmed.

In this opinion the other judges concurred.