[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This matter is before the court on a hearing in damages. The plaintiffs, Patricia Smith, Carol Tartagni and Lectron Labs, Inc., initially commenced this action as an application for an ex parte temporary restraining order on May 6, 1999, against the defendant, Charles Snyder. Subsequently, the plaintiffs amended their complaint and cited in the defendants CS, Industries, LLC, Donald Snyder and Bettina Snyder. In their amended complaint, the plaintiffs allege that the defendants conspired to: remove a key welding machine thereby depriving the company of certain profitable work, extend insurance benefits to relatives without the consent of the shareholders, lease an automobile without the consent of the shareholders, purchase an automobile without approval, abuse charging privileges, pay employees for sick days not earned, and establish a separate company with the intention of unfairly competing with and depriving the plaintiffs of the value of their investment. On November 28, 2000, the court, Moran, J., granted the CT Page 17181 plaintiffs' motion for default and entered judgment for the plaintiffs due to the defendants' repeated failure to comply with discovery.
The plaintiffs filed a certificate of closed pleadings on February 27, 2001, and the matter was scheduled for a hearing in damages. At the hearing in damages, the court heard evidence from the parties and ordered briefs limited to the following issue: what authority does the court have to award damages against an at will employee for establishing a competing business and soliciting the employer's clients if the employee is not under a written contract precluding solicitation and competition?
The court makes the following findings of fact. The plaintiffs protected their suppliers, customers, pricing schemes and processes, and treated them as proprietary information. The defendants kept their competing venture secret from the plaintiffs. Specifically, the defendants, while in the plaintiffs' employ: 1) started a competing business, 2) utilized fraudulent means to misappropriate the plaintiffs' most productive and efficient machine, 3) acted to discourage the plaintiffs' existing customers by over quoting jobs, 4) disrupted the plaintiffs' cash flow by not sending out bills, 5) altered the plaintiffs' company records to prevent the plaintiffs' from being able to rehire employees who had been laid off, and 6) solicited the plaintiffs' customers and diverted them to the defendants' new business venture.
The plaintiffs are entitled to damages under Connecticut common law and the Connecticut Unfair Trade Practices Act.
Common Law
"The law is well settled that knowledge acquired by an employee during his employment cannot be used for his own advantage to the injury of the employer during the employment; and after the employment has ceased the employee remains subject to a duty not to use trade secrets, or other confidential information, which he has acquired in the course of his employment, for his own benefit or that of a competitor to the detriment of his former employer. . . . It matters not that there is no specific agreement on the part of the employee not to disclose the knowledge he has so acquired." (Citations omitted.) Allen Manufacturing Co. v. Loika,145 Conn. 509, 514, 144 A.2d 306 (1958).
The plaintiffs claim that the defendants breached their fiduciary duty to the plaintiffs by misappropriating the plaintiffs' property, customers and business opportunities. A breach of a fiduciary duty owed to an employer "constitutes a reckless indifference to the employers rights."Blum, Shapiro Co. v. Searles Houser, Superior Court, judicial district of Hartford at Hartford, Docket No. 586283 (August 11, 1999 CT Page 17182Booth, J.) (defendants' actions constituted reckless indifference and the court ruled the plaintiff was entitled to recover punitive damages and attorney's fees in addition to actual damages).
The common law principle of misappropriation, in the context of trade secrets, has been codified in the Connecticut Unfair Trade Secrets Act, General Statutes § 35-50 et seq. See ProFitness, Inc. v.Plankenhorn, Superior Court, judicial district of Stamford/Norwalk at Stamford, Docket No. 144106 (December 6, 1995, Karazin, J.) ("the common law claim for misappropriation of trade secrets has been superseded by the Uniform Trade Secrets Act. General Statutes § 35-50 et seq.") The Connecticut Uniform Trade Secrets Act provides, in pertinent part, that misappropriation means the "disclosure or use of a trade secret of another without express or implied consent by a person who . . . at the time of disclosure or use, knew or had reason to know that his knowledge of the trade secret was . . . acquired under circumstances giving rise to a duty to maintain its secrecy or limit its use. . . ." General Statutes § 35-51 (b)(2)(B) (ii). A trade secret is defined as "information, including a formula, pattern, compilation, program, device, method, technique, process, drawing, cost data or customer list that: (1) Derives independent economic value, actual or potential, from not being generally known to, and not being readily ascertainable by proper means by, other persons who can obtain economic value from its disclosure or use, and (2) is the subject of efforts that are reasonable under the circumstances to maintain its secrecy." General Statutes § 35-51 (d).
"[T]he trial court has broad discretion in determining whether damages are appropriate. . . ." (Citation omitted.) Elm City Cheese Co. v.Federico, 251 Conn. 59, 90, 752 A.2d 1037 (1999). General Statutes §35-53 (b) provides in relevant part, that "if the court finds willful and malicious misappropriation, the court may award punitive damages . . . and may award reasonable attorney's fees to the prevailing party." Id. In addition to or in lieu of injunctive relief, a complainant may also recover compensatory damages. Dunsmore Associates v. D'Alessio, Superior Court, judicial district of New Haven at New Haven, Docket No. 409906 (January 6, 2000, Levine, J.) In order to recover such damages, "the plaintiff must prove that it sustained actual loss, or that the defendant was unjustly enriched, as a result of its misappropriation." Id. "Actual loss in this context means the amount of money that the plaintiff lost from the defendant's misappropriation; it is measured by how much better off the plaintiff would have been before the defendant's misappropriation." Id.
"A complainant also may recover for the unjust enrichment caused by misappropriation that is not taken into account in computing damages for actual loss. . . . Unjust enrichment is a very broad and flexible CT Page 17183 equitable doctrine . . . which has as its basis that it is contrary to equity and good conscience for the defendant to retain a benefit which has come to him at the expense of the plaintiff. . . . Its three basic requirements are (1) that the [defendant was] benefitted [benefited], (2) the [defendant] unjustly did not pay the [plaintiff] for the benefits, and (3) that the failure of payment was to the [plaintiff's] detriment. . . ." (Citations omitted; internal quotation marks omitted.) Id.
Accordingly, the court finds that the plaintiffs are entitled to the amount of $235,000.00, for compensatory damages due to the defendants' misappropriation of company property, customers and business opportunities. In addition, the court finds that the defendants' conduct was wilful and malicious and awards the plaintiffs punitive damages in the amount of $40,000.00.
CUTPA
General Statutes § 42-110b(a) provides, "[n]o person shall engage in unfair methods of competition and unfair or deceptive acts or practices in the conduct of any trade or commerce. "[I]n determining whether a practice violates CUTPA we have adopted the criteria set out in the cigarette rule by the federal trade commission for determining when a practice is unfair: (1) [W]hether the practice . . . offends public policy as it has been established by statutes, the common law or otherwise . . . (2) whether it is immoral, unethical, oppressive, or unscrupulous; (3) whether it causes substantial injury to consumers. . . . All three criteria do not need to be satisfied to support a finding of unfairness."Thames River Recycling, Inc. v. Gallo, 50 Conn. App. 767, 785-86,720 A.2d 242 (1998). "A practice may be unfair because of the degree to which it meets one of the criteria or because to a lesser extent it meets all three. . . . Morever, [our Supreme Court] has set forth a three part test for satisfying the substantial injury criterion: [1] [the injury] must be substantial; [2] it must not be outweighed by any countervailing benefits to consumers or competition that the practice produces; and [3] it must be an injury that consumers themselves could not reasonably have avoided." Calandro v. Allstate Ins. Co., 63 Conn. App. 602, 608,778 A.2d 212 (2001).
"[T]he plaintiff who establishes CUTPA liability has access to a remedy far more comprehensive than the simple damages recoverable under common law. . . . This remedy is not limited to mere compensatory damages." (Citations omitted; internal quotation marks omitted.) Larsen ChelseyRealty Co. v. Larsen, 232 Conn. 480, 509, 656 A.2d 1009 (1995). General Statutes § 42-110g(a) provides, in pertinent part, any person who suffers any ascertainable loss as a result of a violation of General CT Page 17184 Statute § 42-110b, "is entitled to have the trial court consider awarding both punitive damages . . . and attorney's fees." Id. "Awarding punitive damages and attorney's fees under CUTPA is discretionary. . . ."Gargano v. Heyman, 203 Conn. 616, 622, 525 A.2d 1343 (1987). "In order to award punitive or exemplary damages, evidence must reveal a reckless indifference to the rights of others or an intentional and wanton violation of those rights." (Internal quotation marks omitted.) Id.
The plaintiffs offered credible expert testimony as to the value of Lectron Labs, Inc. as an ongoing business at the end of 1998, said value being $250,000.00 after deducting all expenses and obligations of the company. The court finds that said business equity was seriously compromised and markedly reduced by the aforesaid acts of the defendants. Said acts were directly responsible for the closing of said business and the limiting of the plaintiffs' recovery of assets to approximately $15,000.00, secured from the sale of machinery and equipment.
It is clear from the facts of this case that the defendants engaged in unfair methods of competition as evidenced by their diversion of the plaintiffs' customers and the welding machine. Further, the defendants acted in a deceptive manner in establishing a competing business while feigning loyalty to the plaintiffs' company. The plaintiffs are therefore entitled to damages in the amount of $235,000.00. In addition, the court finds the defendants' conduct revealed reckless indifference to the plaintiffs' rights and awards the plaintiffs punitive damages.
Therefore, plaintiffs shall recover of the defendants $235,000.00 compensatory damages; $40,000.00 punitive damages; $40,000.00 damages for CUTPA violations; and $20,000.00 attorneys fees.
BY THE COURT,
Judge David W. Skolnick