[EDITOR'S NOTE: This case is unpublished as indicated by the issuing court.] MEMORANDUM OF DECISION
This is an action by a homeowner against a contractor he retained to build a deck at the rear of the home. The gravamen of the plaintiff's claim is that the defendant contractor negligently damaged septic system pipes that eventually caused the replacement of the entire septic system.
The court does not agree with the plaintiffs claims and finds them to be unproven. Before reaching the legal issues, the court will address the facts.
The major player in this entire venture was the plaintiff.
The plaintiff alone had knowledge and control of his premises. He alone applied for and received all of the necessary permits. The defendant did not know the location of any septic system pipes. The septic tank in question was not in the work area and there is no visible evidence that the footings installed by the defendant damaged anything. In any event, it appears that the plaintiff presented one plan for approval by the town and utilized another, more extensive plan with the defendant, telling him everything was approved. The best evidence the plaintiff offered on the broken septic pipe was by the man, Carl Musial, who repaired it. But even he said only that it "Looked like footing broke the pipe, sounds like it, yes." (He also said that 90% of the damages to the septic system were NOT due to the pipe.) Again, the location of the septic system was the problem of the plaintiff, not the defendant. The town sanitarian testified that the site was not properly staked, that his file revealed nothing about a footing hitting pipe and he did not verify any broken pipes or damage caused to the tank by the construction. The plaintiff testified that he put the stakes where he "thought" things were. Again, it was the plaintiff who told him it was alright with the town to go ahead with the original deck plan of sixteen feet when the approved plan was for twelve feet! Once the defendant received the permit from the plaintiff he felt free to proceed. CT Page 1290
Defendant's exhibit 13 is further evidence of the knowledge, premise control and problem causing by the plaintiff. This exhibit is a letter from the New Milford Director of Health, Mike Crespan addressed to the New Milford Mayor, Arthur Peitler concerning the septic system and the plaintiff. This exhibit supports the defendant's claim that the woes the plaintiff now complains of were self-imposed. (Exhibit attached.)
The defendant has been licensed to build decks for over sixteen years and is an experienced contractor. The court finds him to be credible and the homeowner to be less than credible. The court finds the defendant was not negligent.
The following is a discussion on the other legal arguments made by the plaintiff.
The first issue is whether the failure of the defendant contractor to renew his Home Improvement Contractor license affects the enforceability of the contract between the plaintiff and defendant.
The failure of the defendant contractor to renew his license for a one month period was in violation of General Statutes § 20-427 (b) (4) and constitutes an unfair or deceptive trade practice under subsection (a) of General Statutes § 41-110b. Nevertheless, the plaintiff failed to satisfy his burden of proof that he suffered an ascertainable loss on account of the defendant's unfair or deceptive trade practice and, therefore, is not entitled to the recovery of damages. (The defendant had recently divorced and his ex-wife merely did not send the renewal check in.)
The second issue is whether a contractor is liable for failing to comply with the relevant building codes when, pursuant to contract, the owner was responsible for obtaining all permits necessary for compliance with the building codes.
A contractor may be held liable for failing to comply with the building codes, but the owner must be held responsible for any losses incurred because of the owner's failure to obtain all permits necessary for the contractor's compliance with the building codes and that the liability of the contractor, if any, must be reduced by the amount of those losses.
General Statutes § 20-427 (b) states: "No person shall: . . . (4) use or attempt to use a certificate which has expired or which has been suspended or revoked, [or] (5) offer to make or make any home improvement without having a current certificate of registration under this chapter." Subsection (c) states: "In addition to any other remedy provided for in CT Page 1291 this chapter, (1) any person who violates any provision of subsection (b) of this section . . . shall be guilty of a class B misdemeanor. . . . Notwithstanding subsection (d) of section 53a-29 or section 54-56e, if the court determines that a contractor cannot fully repay his victims within the period of probation established in subsection (d) of section 53a-29 or section 54-56e, the court may impose probation for a period of not more than five years. A violation of any of the provisions of this chapter shall be deemed an unfair or deceptive trade practice under subsection (a) of section 42-110b." "General Statutes 20-427 (b) (5) makes it unlawful for a home improvement contractor whose certificate of registration has expired to offer to make or make home improvements."State v. Poirier, 19 Conn. App. 1, 5, 559 A.2d 1183 (1989). Subsections (4) and (5) of § 20-427 "strongly suggest that a contractor's registration had to be in effect at the time of entering into the contract, not at some earlier or later time; and . . . [courts] must [harmonize] the various sections of the statute, not interpret them in a way that creates conflict. Where some provisions of the Home Improvement Act forbid a contractor from proceeding if his registration has expired, other provisions cannot logically be construed to allow such conduct if the contractor, months later. renews the expired certificate." Judelsonv. Christopher O'Connor, Inc., Superior Court, judicial district of New Haven, Docket No. CV 95 0371181 (June 7, 1995, Hodgson, J). Accordingly, the defendant violated § 20-427 (b) of the Home Improvement Act and, therefore, engaged in unfair or deceptive trade practice in violation of § 42-110b (a) when he entered into a contract with the plaintiff to replace his deck with a Home Improvement Registration that had expired.
Nevertheless, the plaintiff here suffered no damages as a result of the defendant's failure to renew his certificate of registration. General Statutes" § 42-110g (a) of CUTPA affords a cause of action to [a]nyperson who suffers any ascertainable loss of money or property . . . as a result of the use or employment of a method, act or practice prohibited by section 42-110b." (Emphasis in original; internal quotation marks omitted.) Macomber v. Travelers Property Casualty Corp.,261 Conn. 620, 645, 803 A.2d 311 (2002). "Despite CUTPA's broad remedial nature, [t]he plain language of § 42-110g (a) provides one limitation by requiring that the plaintiff suffer an ascertainable loss that was caused by the alleged unfair trade practice. . . . While our courts have applied that requirement liberally, a claimant must still prove by a preponderance of the evidence that it suffered an ascertainable loss of money or property as a result of a defendant's actions." Calandro v.Allstate Ins. Co., 63 Conn. App. 602, 612, 778 A.2d 212 (2001). Here, the plaintiff has failed to satisfy his burden of proof. He presented no evidence of any causal connection between the defendant's failure to renew his license before entering into this home improvement contract CT Page 1292 with the plaintiff and the damage to the plaintiffs septic tank. Nor has the plaintiff offered any proof that had the defendant renewed his license prior to entering into this contract, the plaintiffs septic tank would not have been damaged.
As aforementioned the plaintiff submitted twelve-foot drawing plans of the deck to the town for inspection in order to obtain the necessary building permits. He then told the defendant to proceed with construction based on originally agreed-upon sixteen-foot drawing plans. Therefore. the plaintiff deceived the town in order to obtain the requisite permits and subsequently deceived the defendant by telling him to proceed with the unapproved drawings. Equity dictates that the plaintiff be held responsible for any damage, if any, caused by the sixteen-foot construction. In addition, the plaintiff failed to satisfy his burden of proof that the defendant's construction of the deck according to the sixteen-foot drawings caused any damage to his septic tank. Consequently, the plaintiff is entitled to no damages, actual or otherwise, on account of the defendant's failure to renew his certificate of registration pursuant to the Home Improvement Act.
In Hanecak v. Dalen Construction, Inc., Superior Court, judicial district of Litchfield, Docket No. CV 89 0051035 (April 15, 1994, Walsh,J.), the plaintiff, as general contractor, was responsible for arranging for town inspection at various stages of construction of a deck on the plaintiffs home so that the town could ensure that the work at those stages complied with the state building code. The court found that although the defendant subcontractor had performed various portions of his job negligently and in an unworkmanlike manner, "if the plaintiff, as general contractor, had fulfilled his duty of arranging for Town inspection at the various appropriate stages of construction, the cost of correcting the defects involved would have been less than it actually was. The plaintiff must bear the responsibility for this." The court held the plaintiff responsible for a portion of the damages incurred as a result of having to hire a carpenter to correct the code violations and work improperly performed by the defendant because the damages would have been less had the plaintiff arranged for periodic inspections. Id. In the present case, the plaintiff was responsible under the contract for obtaining the relevant permits required for compliance with the state and local building codes. Accordingly, the plaintiff must bear the responsibility of any losses incurred because of his failure to obtain the necessary building permits.
On the defendant's counterclaim, the court finds for the defendant in the amount of $1,998 which is composed of the $1,000 due when the stairs were finished, $500 when the benches were completed and $488 at the end CT Page 1293 of the job. The court denies the defendant's claim for $350 to take down the original deck as it is offset by the uncompleted work on the rails.
By the Court,
 ___________________ Gill, J.
 TOWN OF NEW MILFORD Town Hall 10 Main Street New Milford, Connecticut 06776 Telephone (860) 355-6035 • Fax (860) 355-9056 DEFENDANT'S EXHIBIT NO. 13 *
Office of the Health Department
November 14, 2000
TO: Art Peitler, Mayor
FR: Mike Crespan, Director of Health
RE: 25 Mine Hill Road — Dr. Marc Legris Property
Regarding the application to construct a deck at the above referenced property, 1 am providing the facts in this case based on my recollection and the Health Department file.
• Dr. Marc Legris completed an application for an expanded open deck at his residence at 25 Mine Hill Road on 6-7-00.
• The Health Department file showed that the proposed deck location was close to the septic system area. I informed Dr. Legris that we would need to perform a site inspection to verify the required separation distance of five (5) feet. He was requested to stake the deck and septic system.
• A site inspection was performed shortly after 6-7-00. The deck and septic system were not clearly staked so we performed a more extensive field check (probing the ground with a metal bar) and determined that the proposed deck was probably closer than 5 feet to some parts of the CT Page 1294 septic system. Dr. Legris was contacted and informed that some modification of the deck was necessary for approval.
• A revised deck plan dated 6-19-00 was faxed to the Department on 6-23-00. Shortly afterwards, another site inspection was performed by the Department and it was found that parts of the septic system would need to be exposed to accurately determine the separation distances. Dr. Legris was informed.
• On 7-7-00, I called and spoke to Dr. Legris about his plication. My intent was to see if he had any questions and to provide assistance, if necessary. He informed me that he was not proceeding with the approval process.
• On 7-21-00, Dr. Legris re-activated his application and sketched a revised septic system drawing. There was no reason to believe that this revised septic system drawing was accurate. It was not consistent with the as-built in the Health Department file and the system had not been exposed, as required, for verification.
• On 7-25-00 another site inspection was performed. Again the system was not exposed and we could not verify compliance with the separation distance requirement. We attempted to locate the system by probing the ground but were not successful. The new deck was under construction. Dr. Legris was again informed that we would need to have parts of the septic system exposed to determine compliance but we were not contacted again.
I have enclosed the section of the Connecticut Public Health Code, Technical Standards, which specifies the separation distance requirement of 5 feet from the deck to any part of the septic system (an open deck by definition is an accessory structure). As far as I know, Dr. Legris did not request this information from any Health Department staff
Be aware that the local director of health does not have the authority to issue variances to this requirement. Also it is standard department procedure for us to require that portions of a septic system be exposed when compliance with the separation distance are in doubt.
* EDITORS' NOTE: SYMBOL IS ELECTRONICALLY NON-TRANSFERRABLE.]
CT Page 1295